DA 07-0025

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 89

STATE OF MONTANA,

   Plaintiff and Appellee,

  v.

BRITTEN WINKEL, JR.,

   Defendant and Appellant.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
        In and For the County of Yellowstone, Cause No. DC 06-188,
        Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

      Jim Wheelis, Chief Appellate Defender; Joslyn M. Hunt (argued),
      Assistant Appellate Defender, Helena, Montana

   For Appellee:

      Honorable Mike McGrath, Attorney General; Mark W. Mattioli
      (argued), Assistant Attorney General, Helena, Montana

      Dennis Paxinos, County Attorney; Sheila Kolar, Deputy County
      Attorney, Billings, Montana

   For Amici Curiae:

      Willliam F. Hooks (argued) and Chad Wright, Hooks & Wright, P.C.,
      Helena, Montana (Montana Association of Criminal Defense Lawyers)

      Merle Raph, Attorney at Law, Shelby, Montana (Montana County
      Attorneys Association)

      Diana L. Koch, Special Assistant Attorney General, Helena,
      Montana (Montana Department of Corrections)

         Argued and Submitted: October 24, 2007
               Decided: March 18, 2008

Filed:

            _____
                 Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Britten Winkel, Jr. ("Winkel"), appeals from the sentence imposed by the Thirteenth Judicial District, Yellowstone County, following his conviction for felony and misdemeanor drug possession charges.  We affirm.

¶2      We restate the issues as follows:

¶3      I.  Did the District Court err in prohibiting Winkel, as a condition of his suspended sentence, from possessing or consuming alcohol or other intoxicants?

¶4      II.   Did the District Court err in prohibiting Winkel, as a condition of his suspended sentence, from entering any casinos or playing games of chance?

## BACKGROUND

¶5      On October 27, 2005, police executed a search warrant for the residence shared by Winkel and his girlfriend, Shelly Pete.  Police searched the couple's bedroom, and found a glass pipe with suspected methamphetamine residue, 1.2 grams of methamphetamine, baggies of white powder suspected to be methamphetamine, and 13.3 grams of marijuana, divided into individually sealed bags.  The police also found various drug paraphernalia, including a drug ledger, scales, plastic baggies, razors, and bindle material.

¶6      Winkel was charged with one felony count of possession of a dangerous drug in violation of § 45-9-102, MCA, and a misdemeanor count of criminal possession of drug paraphernalia in violation of § 45-10-103, MCA.  Winkel pled guilty to both charges. The District Court sentenced him to three years and six months imprisonment, all of which was suspended.  The court imposed several conditions on Winkel's suspended sentence, including the following restrictions relevant to this appeal:

2

12. The Defendant shall not possess or consume intoxicants/alcohol, nor will he enter any place intoxicants are the chief item of sale. He will submit to Breathalyzer testing or bodily fluid testing for drugs or alcohol as requested by his Probation & Parole Officer.

. . . .

23. The Defendant will not enter any casinos or play any games of chance.

At the sentencing hearing, Winkel objected to these two conditions and asked that they be stricken. Winkel argued that since alcohol and gambling were not factors in his crime, the conditions were not rationally related to his offense.

¶7 Winkel's pre-sentence investigation report (PSI) revealed that he had a somewhat lengthy criminal history, including a prior conviction for a DUI in 1989. Winkel also had a prior drug-related felony conviction for custodial interference: he supplied a sixteen-year-old girl with marijuana and methamphetamine and had sexual intercourse with her. Winkel reported to the PSI officer that his alcohol use was "rare," but admitted to using various illicit drugs over the course of the last thirty years. The PSI recommended that Winkel complete a chemical dependency evaluation, and enroll in an appropriate treatment and relapse prevention program. Nothing in the PSI report suggested that Winkel ever gambled, much less had a gambling problem.

¶8 The District Court refused to strike condition twelve and explained that it prohibited Winkel from using both alcohol and drugs. The court held that since Winkel's offense was drug-related, the condition had a sufficient nexus to his offense. The court also refused to strike condition number twenty-three, stating simply: "Number 23, I will not delete. You need to stay out of casinos and not do that."

¶9 On appeal, Winkel renews his objections to these two sentencing conditions. We affirm.

**STANDARD OF REVIEW**

¶10 In our recent decision in *State v. Ashby*, we announced a dual standard of review for probation conditions. *State v. Ashby*, 2008 MT 83, ¶ 9, ___ Mont. ___, ¶ 9, ___ P.3d ___, ¶ 9. First, we review a sentencing condition for legality, which is a question of law that we review de novo. *Ashby*, ¶ 9. Next, we review the reasonableness of the condition to determine whether the district court has abused its discretion. *Ashby*, ¶ 9.

**DISCUSSION**

¶11 Under § 46-18-202(1)(f), MCA, a judge may impose restrictions or conditions on a suspended sentence which are "reasonably related to the objectives of rehabilitation and the protection of the victim and society." Section 46-18-202(1)(f), MCA. A condition is "reasonably related to the objectives of rehabilitation and the protection of the victim and society," § 46-18-202(1)(f), MCA, if it has "some correlation or connection to the underlying offense for which the defendant is being sentenced." *State v. Ommundson*, 1999 MT 16, ¶ 11, 293 Mont. 133, ¶ 11, 974 P.2d 620, ¶ 11. The objectives of a condition must be: "(1) to *rehabilitate* the offender by imposing restitution or requiring treatment so that he or she does not repeat the same criminal conduct that gave rise to the sentence; and (2) to *protect* society from further similar conduct." *Ommundson*, ¶ 11. In *Ashby*, we expanded the rule in *Ommundson* to uphold conditions of probation "so long as the condition has a nexus to either the offense for which the offender is being sentenced, or to the offender himself or herself." *Ashby*, ¶ 15. However, we cautioned

4

that an offender-related condition may only be imposed when the "history or pattern of conduct to be restricted is recent, and significant or chronic." *Ashby*, ¶ 15.

¶12 **I. Did the District Court err in prohibiting Winkel, as a condition of his suspended sentence, from possessing or consuming alcohol or other intoxicants?**

¶13 The District Court attached the following condition to Winkel's suspended sentence: "The Defendant shall not possess or consume intoxicants/alcohol, nor will he enter any place intoxicants are the chief item of sale. He will submit to Breathalyzer testing or bodily fluid testing for drugs or alcohol as requested by his Probation & Parole Officer." Winkel argues that this condition is illegal, because alcohol played no role in his offense. Further, he attests, he never sold methamphetamine in bars. Finally, Winkel claims he has no history of alcohol abuse that would affect his rehabilitation.

¶14 Winkel pled guilty to possession of a dangerous drug, methamphetamine. He also pled guilty to possession of drug-related paraphernalia. The drug-related nature of Winkel's offense alone suffices as a sufficient nexus to this condition. This condition, which prohibits Winkel from possessing or ingesting intoxicants, and requires him to submit to drug testing, clearly serves the purpose of rehabilitating the offender and protecting society. *Ommundson*, ¶ 11.

¶15 The District Court's restriction on possessing or ingesting intoxicants is especially appropriate in the instant case. Winkel's PSI report reveals a long history of chemical dependency. Winkel began using illegal drugs at age sixteen, when he first tried marijuana. In a 2002 PSI report, the Columbus Police Department characterized Winkel as a "regular user" of marijuana and methamphetamine. Winkel also admitted to using

5

crystal meth, mushrooms, and hash. Perhaps most troubling is Winkel's tendency to minimize his chemical dependency. In the PSI, Winkel reported he had never had any problems with alcohol use, despite his DUI conviction. Winkel claimed that October 24, 2005, was the first time he had tried meth, despite clear evidence in the record to the contrary. Winkel's PSI reflects a pattern of substance abuse that is both recent and chronic.

¶16 In sum, the District Court's condition prohibiting Winkel from using intoxicants has a nexus to both the underlying crime and the offender. Winkel was sentenced for possession of illegal drugs, thus the condition prohibiting him from using drugs or alcohol is related to his offense. This nexus to the underlying offense is enough to satisfy *Ommundson*. However, given Winkel's significant history of substance abuse, the no-intoxicants condition is also justified by a strong nexus to the offender in the instant case. The condition is within the parameters set by § 46-18-202(1)(f), MCA, because it is reasonably related to the objectives of rehabilitation and the protection of the victim and society.

¶17 **II. Did the District Court err in prohibiting Winkel, as a condition of his suspended sentence, from entering any casinos or playing games of chance?**

¶18 Section 23-5-119, MCA, requires all casinos offering card games, sports pools, and video gaming to have a license to serve alcoholic beverages. Section 23-5-119(1), MCA. As such, all casinos in Montana serve and sell alcohol. By the terms of his probation, Winkel is prohibited from consuming or possessing alcohol, or entering any place where it is the "chief item of sale." As discussed above, this condition is

reasonably related to Winkel's rehabilitation and to the protection of society for two reasons: (1) it is connected to the drug-related nature of his underlying offense, and (2) it is called for by his recent and chronic history of substance abuse and chemical dependency.

¶19 The District Court found that Winkel's rehabilitation would be jeopardized if he had access to intoxicants like alcohol. Further, the District Court found that it was necessary for the protection of society to prohibit Winkel from access to any intoxicants—whether alcohol or illegal drugs. The additional condition prohibiting Winkel from entering casinos, where alcohol is universally and conspicuously available, is consistent with the condition prohibiting him from possessing or consuming intoxicants. The objectives of this condition meet both prongs of the *Ommundson* test. *Ommundson*, ¶ 11. First, the condition furthers Winkel's rehabilitation by restricting his access to intoxicants. Second, it protects society by preventing Winkel from consuming intoxicants, especially relevant in this case because all of Winkel's offenses were drug or alcohol-related.

**CONCLUSION**

¶20 In conclusion, we uphold both of the challenged conditions of Winkel's sentence. The condition restricting Winkel from use of intoxicants has a nexus to both his offense and the offender himself; thus, it satisfies the requirements of *Ommundson* and § 46-18-202(1)(f), MCA. The no-casinos condition is also within the parameters set by § 46-18-202(1)(f), MCA, and *Ommundson*. Since alcohol is inseparable from gambling in Montana casinos, this condition achieves the same objectives of rehabilitation and

7

protection.  We conclude the District Court did not abuse its discretion by imposing these

conditions upon his sentence.  Thus, we affirm the District Court's sentence.


                                                    /S/ W. WILLIAM LEAPHART


We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ BRIAN MORRIS