
DA 07-0223

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 192

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHRIS LESSARD,

      Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District, In and For the County of Flathead, Cause No. DC 2006-136(A) Honorable Ted O. Lympus, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Gregory Hood, Assistant Public Defender, Kalispell, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General; Mark W. Mattioli, Assistant Attorney General, Helena, Montana

Submitted on Briefs: February 20, 2008

Decided: June 3, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Chris Lessard appeals three conditions on his sentence imposed by the District Court for the Eleventh Judicial District, Flathead County. We affirm in part, reverse in part, and remand with instructions.

## BACKGROUND

¶2     Between June 1, 2005, and March 17, 2006, a number of Flathead County residents reported that their carved bears had been stolen. According to one of the victims, he purchased his carving approximately 15 to 20 years earlier from an Idaho chainsaw carver. He stated that it cost $350 at that time and would cost a minimum of $600 to replace now. Another victim valued his stolen bear at $250. All in all, the aggregate value of the stolen property was estimated at $3,000.[1]

¶3     On February 27, 2006, the Kalispell Police Department received several tips that Lessard and his wife had been bragging about going "bear hunting" and that they were the perpetrators of this 10-month crime spree. The police executed a search of Lessard's residence, where they found a number of the stolen bears. Some of the bears, however, had already been sold at garage sales. Lessard claimed that he had no knowledge the carvings had been stolen and that he was "unknowingly in possession of stolen property."

¶4     The State charged Lessard by information on March 20, 2006, with theft (common scheme), a felony, in violation of § 45-6-301, MCA. Lessard initially pleaded not guilty;

---

[1] Remarkably, this sort of thing goes on in other parts of the country. In western Missouri, on March 30, 2008, some "lousy thieves" stole Big Bertha, the 6-foot, 500-pound carved wooden bear that stood in front of Bill Struewe's sewer and plumbing business. *See* Toriano L. Porter, *Who stole Bertha?* The Examiner (Independence, Mo.) (Apr. 2, 2008).

however, the parties ultimately entered into a plea agreement under § 46-12-211(1)(b), MCA, wherein Lessard agreed to plead guilty to the charge and the State, in return, agreed to recommend that the court defer imposition of sentence for a period of three years. Thereafter, Lessard entered a plea of no contest, which the District Court accepted on December 7, 2006.

¶5 A probation/parole officer with the Department of Corrections conducted a presentence investigation and filed a report ("PSI") on January 22, 2007. Among other things, the PSI recited Lessard's background, his criminal history, and the circumstances of the offense. According to the PSI, Lessard was 24 years old and presently unemployed. He had a prior conviction for felony residential burglary in Pierce County, Washington, which occurred in 2003.

¶6 Lessard reported that he first tried alcohol at age 18 and rarely drinks. On the matter of illegal drugs, the probation/parole officer noted the following:

> The Defendant indicated he tried marijuana on only one occasion, when he was nineteen years old. It should be noted a glass marijuana pipe was discovered in the master bedroom of the Defendant's home when law enforcement conducted the search pursuant to this crime. He eventually admitted to law enforcement that he owned the pipe and had last smoked marijuana two days prior to the search conducted on March 13, 2006.

In addition, as a result of the 2003 conviction in Pierce County, Washington, Lessard was ordered to complete drug and alcohol treatment "at the discretion" of his supervising officer, but the records were unclear as to whether the supervising officer ever ordered Lessard to do so, and Lessard claimed that he had never received any chemical-dependency counseling.

3

¶7    The probation/parole officer recommended a number of conditions of probation in the PSI. At issue on this appeal are the following three recommended conditions:

- "The Defendant shall not possess or consume intoxicants/alcohol, nor will he enter any place intoxicants are the chief item of sale."

- "He will submit to Breathalyzer testing or bodily fluid testing for drugs or alcohol as requested by his Probation & Parole Officer."

- "The Defendant will not enter any casinos or play any games of chance."

¶8    At the January 26, 2007 sentencing hearing, Lessard indicated that he had received a copy of the PSI, had reviewed it, and did not have any corrections to make to it. However, he objected to the three recommended conditions quoted above on the ground that there was no nexus between these conditions and the underlying offense for which he was being sentenced. In addition, he pointed out that the PSI "indicates that [he] rarely drinks, he does not have any sort of alcohol problem, in addition to which there is no indication that this offense involved any sort of alcohol." In response, the prosecutor argued "there is a nexus in this case that when outstanding restitution is being owed that gambling and the purchase of alcohol should be prohibited."

¶9    The District Court overruled Lessard's objection. The court stated that it would defer imposition of sentence for a period of three years, subject to the conditions recommended in the PSI, including the three challenged conditions. In addition, the court ordered Lessard to pay restitution. After the court imposed the sentence, and while still on the record, the prosecutor asked Lessard whether he drinks, to which Lessard responded: "I have a beer about once every two months." In addition, the prosecutor

4

asked Lessard whether he gambles, to which Lessard responded: "Five dollars once every two, three weeks."

¶10 The court's written judgment, entered April 4, 2007, recited the three-year deferred imposition of sentence, which was made subject to a number of conditions, including the following:

> 9)  He may not consume or possess intoxicants, nor may he frequent bars or other businesses where alcohol is the chief item of sale.
> 10)  He must submit to drug and alcohol testing (breath or bodily fluid testing) on a regular or random basis as required by his supervising officer.
> . . . .
> 20)  He may not gamble or frequent casinos.

¶11 This appeal followed.

## ISSUE

¶12 The sole issue on appeal is whether Conditions 9, 10, and 20 are illegal or unreasonable.

## STANDARD OF REVIEW

¶13 We review challenges to sentencing conditions under a two-prong standard. First, we review the challenged condition for legality. *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, ¶ 9, 179 P.3d 1164, ¶ 9. A sentencing condition is illegal if the sentencing court lacked statutory authority to impose it, if the condition falls outside the parameters set by the applicable sentencing statutes, or if the court did not adhere to the affirmative mandates of the applicable sentencing statutes. *State v. Brotherton*, 2008 MT 119, ¶ 10, 342 Mont. 511, ¶ 10, 182 P.3d 88, ¶ 10; *see also State v. Stephenson*, 2008 MT 64, ¶ 15, 342 Mont. 60, ¶ 15, 179 P.3d 502, ¶ 15. This determination is a question of law and, as

5

such, our review of the condition's legality is de novo. *Brotherton*, ¶ 10. Second, we review the reasonableness of the challenged condition for an abuse of discretion (unless the condition is mandated by statute, in which case there is no exercise of discretion by the sentencing court). *Ashby*, ¶ 9; *Brotherton*, ¶ 10. A sentencing court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Brotherton*, ¶ 10.

**DISCUSSION**

¶14 A sentencing court's authority to impose a criminal sentence derives from the law; it is not inherent. *See State v. Hicks*, 2006 MT 71, ¶ 41, 331 Mont. 471, ¶ 41, 133 P.3d 206, ¶ 41; *State v. Hatfield*, 256 Mont. 340, 346, 846 P.2d 1025, 1029 (1993). Therefore, a sentencing condition is legal only if it is authorized by applicable sentencing statutes. *See Brotherton*, ¶¶ 11-13.

¶15 The conditions at issue here are not explicitly mandated by law in the Montana Code; thus, the statutory authority for the conditions would be §§ 46-18-201(4) and -202(1)(f), MCA (2005). The former authorizes a sentencing judge, when deferring imposition of sentence or suspending all or a portion of execution of sentence, to impose upon the offender "any reasonable restrictions or conditions." Section 46-18-201(4), MCA. "Reasonable restrictions or conditions" include those enumerated in § 46-18-201(4)(a)-(m), MCA (2005), *as amended at* § 46-18-201(4)(a)-(n), MCA (2007), as well as those which the judge considers "necessary for rehabilitation or for the protection of the victim or society," § 46-18-201(4)(n), MCA (2005), *recodified at* § 46-18-201(4)(o), MCA (2007). Similarly, § 46-18-202(1)(f), MCA, authorizes a

sentencing judge to impose on a sentence any limitation "reasonably related to the objectives of rehabilitation and the protection of the victim and society."

¶16    In *State v. Ommundson*, 1999 MT 16, 293 Mont. 133, 974 P.2d 620, we held that in order to be "reasonably related to the objectives of rehabilitation and the protection of the victim and society," a sentencing limitation or condition must have "some correlation or connection to the underlying offense for which the defendant is being sentenced." *Ommundson*, ¶ 11.  We recently expanded this test in *Ashby*.  Specifically, we held that a sentencing judge may impose a particular condition of probation pursuant to §§ 46-18-201(4) and -202(1)(f), MCA, if the condition has a nexus either to the offense for which the offender is being sentenced or to the offender himself or herself.  *Ashby*, ¶ 15; *see also Brotherton*, ¶ 17.

¶17    Our *Ashby* test allows a sentencing court discretion to craft conditions of sentence appropriate to the management of probationers generally, but also requires the court to individualize its exercise of discretion so as to impose conditions that have some correlation or connection to the underlying offense or to the unique background and characteristics of the individual offender.  However, with respect to offender-related conditions, we cautioned in *Ashby* that courts may impose such conditions only where the history or pattern of conduct to be restricted (e.g., alcohol or drug abuse) is "recent, and significant or chronic.  A passing, isolated, or stale instance of behavior or conduct will be insufficient to support a restrictive probation condition imposed in the name of offender rehabilitation." *Ashby*, ¶ 15.

7

¶18    In the case at hand, therefore, we must consider whether each of Conditions 9, 10, and 20 has a nexus either to Lessard's offense of theft or to his unique background and characteristics. We will address each condition in turn.

**Condition 9**

¶19    Under Condition 9, Lessard "may not consume or possess intoxicants, nor may he frequent bars or other businesses where alcohol is the chief item of sale." Lessard contends that this condition is illegal and must be stricken. He points out that there is no evidence in the record that alcohol or intoxicants were connected in any way to his offense. More specifically, he asserts that he did not commit the crime while under the influence of alcohol or in an effort to procure alcohol. Furthermore, he points out that there is no indication in the PSI that he has a history of alcohol abuse. In short, Lessard contends that neither the PSI nor the District Court's judgment recites any facts which would support a restriction on the use of intoxicants/alcohol.

¶20    Much of the State's argument in response is directed at persuading this Court to modify the *Ommundson* test so that sentencing courts may look beyond the circumstances of the particular crime and consider "the individual defendant's history and his or her 'characteristics, circumstances, needs, and potentialities.' " This argument was addressed and resolved—largely in favor of the State's position—in our *Ashby* decision. (The State's brief in this case was filed before *Ashby* was handed down.) There is no reason to address the argument again in this Opinion.

¶21    With respect to Condition 9, the State does not contend that a nexus exists between the intoxicants restriction and Lessard's stealing the carved bears. Indeed, as

8

Lessard points out, there is no evidence in the record that this offense involved or was related to alcohol use. Instead, the State makes several arguments related to criminal defendants generally and to Lessard specifically.

¶22 As for the former, the State offers a number of generalizations about the evils of alcohol—e.g., alcohol reduces inhibitions and impairs judgment. The State asserts that "the connection between alcohol use and crime and recidivism is established" and that "the risk of recidivism is compounded when felony offenders are allowed to drink alcohol." As an example of this, the State informs us that the defendant/probationer in *State v. Jones*, 2006 MT 209, 333 Mont. 294, 142 P.3d 851, was drinking in a bar before he killed Gisela Morris (a fact not stated in the *Jones* opinion). The State also reports that 93.1 percent of 654 offenders committed to Montana prelease centers had "a condition of substance abuse or chemical dependency disorder either at admission or discharge."

¶23 Such broad generalizations and predictions based on statistics, however, are entirely inconsistent with the *individualized* sentencing that the State advocates and that *Ashby* requires. Moreover, we have rejected similar arguments offered by the State in a number of prior cases. For instance, the State asserted in *Brotherton* that "[a]lcohol lowers inhibitions and the ability to think rationally" and that "[p]eople often mix alcohol with drugs." *Brotherton*, ¶ 21. Addressing these assertions, we stated that "[s]uch generalizations . . . are wholly insufficient to show that [the no-alcohol condition at issue] has a nexus to Brotherton's offense or his unique background and characteristics. Indeed, if these general propositions were sufficient to sustain a no-alcohol condition, then such a condition would be justified in every case." *Brotherton*, ¶ 21. Likewise, in *State v.*

9

*Greeson*, 2007 MT 23, 336 Mont. 1, 152 P.3d 695, the State appeared to rely on the prosecutor's contention during Greeson's sentencing that alcohol consumption reduces judgment and could contribute to Greeson's willingness to commit future similar crimes (her conviction was for identity theft). *Greeson*, ¶ 14. We concluded that the State's position was "totally without merit":

> [I]t may well be that alcohol consumption reduces judgment and could thus relate to any person's "willingness" to commit a crime, although a prosecutor's unsupported commentary on such matters is not evidence of any kind. Such general commentary is wholly inadequate, however, to establish a nexus between Greeson and the offense of which she was convicted or to establish that the alcohol and testing condition at issue here would in any real way promote Greeson's rehabilitation or protect society.

*Greeson*, ¶ 15; *see also State v. Armstrong*, 2006 MT 334, ¶¶ 14-15, 335 Mont. 131, ¶¶ 14-15, 151 P.3d 46, ¶¶ 14-15; *State v. Holt*, 2006 MT 151, ¶ 51, 332 Mont. 426, ¶ 51, 139 P.3d 819, ¶ 51.

¶24 Turning, then, to Lessard's individual characteristics, the State notes that Lessard admitted at the sentencing hearing to having a beer "about once every two months." However, evidence of such alcohol use clearly fails to establish a "recent, and significant or chronic" history or pattern of alcohol abuse. *Ashby*, ¶ 15.

¶25 Alternatively, the State offers a highly critical view of Lessard's character. In particular, the State asserts that Lessard "is a recidivist manipulator whose word cannot be trusted." The State contends that Lessard "minimizes his criminal behavior and problems" and has the "potentiality" for "avoiding accountability and abusing substances." Thus, the State urges, Lessard's claim that he rarely drinks alcohol "has to be met with skepticism."

10

¶26 Setting aside the fact that the District Court made no such finding concerning Lessard's credibility, the State's commentary on Lessard's character is not evidence of any kind. *Cf. Greeson*, ¶ 15; *Armstrong*, ¶ 15. More to the point, none of the State's conclusory assertions establishes a nexus between Condition 9 and Lessard's background and characteristics. It seems that the State would have us deduce, based on the State's critical assessment of Lessard's character, that Lessard lied to the District Court and to the author of the PSI about how often he consumes alcoholic beverages and that he actually has a recent, and significant or chronic history of alcohol abuse that justifies the no-alcohol condition on his sentence. We refuse to engage in such speculation. We emphasize that conjecture of this nature cannot supplant the required showing that the condition at issue has a nexus either to the offense for which the offender is being sentenced or to the offender himself or herself.[2] *Ashby*, ¶ 15.

¶27 Based on the record before us, we hold that Condition 9 is not reasonably related to Lessard's offense of theft, is not necessary to ameliorate a problem with alcohol, and is not more likely to protect society from further bouts of stealing carved bears. *See Ashby*, ¶ 19. Accordingly, Condition 9 is illegal and must be stricken.

**Condition 10**

---

[2] In this regard, the State points out in its recitation of the factual background of this case that Lessard's father was sentenced to seven years in prison for raping a ten-year-old boy and that his mother went to prison for fifteen years for withholding evidence in a murder investigation. (Lessard reported this information to the probation/parole officer, who noted it in the PSI.) We are at a complete loss to understand what bearing these matters have on this appeal and the probation conditions at issue. Indeed, we reject any suggestion that the conditions of Lessard's probation may be based on the criminal convictions of his parents.

¶28 Under Condition 10, Lessard "must submit to drug and alcohol testing (breath or bodily fluid testing) on a regular or random basis as required by his supervising officer." Given our holding under Condition 9, the alcohol testing contemplated by Condition 10 must be stricken.

¶29 As for the drug-testing requirement, Lessard's argument here is essentially the same as his argument under Condition 9—namely, that neither the PSI nor the District Court's judgment recites any facts which would support a requirement of continuous drug testing. He states that there is no indication in the PSI of a history of drug abuse.

¶30 In response, the State points out that Lessard indicated to the probation/parole officer that he had tried marijuana on only one occasion (when he was 19 years old), yet the police found a glass marijuana pipe in the master bedroom of Lessard's home when they searched it and he eventually admitted to law enforcement that he owned the pipe and had last smoked marijuana two days prior to the search (i.e., on March 11, 2006). The State contends, therefore, that Lessard is "an abuser of illegal drugs." Finally, the State argues more generally that drug-testing requirements enable probation officers to monitor probationers' compliance with probation conditions.

¶31 While there is no evidence in the record establishing a nexus between the drug-testing condition and Lessard's offense of stealing the carved bears, we conclude that there is a sufficient connection between this condition and Lessard's background and characteristics. As just noted, the police found a glass marijuana pipe in the master bedroom of Lessard's home, and he admitted both that he owned the pipe and that he had smoked marijuana just two days earlier. Ownership of a glass marijuana pipe is

suggestive (though by no means conclusive) of nonsporadic marijuana use. Moreover, Lessard was untruthful when he told the probation/parole officer that he had tried marijuana on only one occasion five years earlier. This fact further supports the conclusion that the extent of his drug use was more significant than he let on.

¶32 We hold that there is sufficient evidence in the record of recent and significant drug use to justify the drug-testing requirement in Condition 10. Because this requirement has a sufficient nexus to Lessard's background and characteristics, it is not illegal. Furthermore, given the circumstances discussed above, we conclude that the District Court did not abuse its discretion in imposing this requirement.

**Condition 20**

¶33 Under Condition 20, Lessard "may not gamble or frequent casinos." Lessard contends that this condition is illegal and must be stricken because there is no evidence in the record that gambling had anything to do with his offense. In response, the State points out that Lessard estimated during the sentencing hearing that he gambles "[f]ive dollars once every two, three weeks." In addition, the State argues that the case at hand is analogous to *State v. Kroll*, 2004 MT 203, 322 Mont. 294, 95 P.3d 717, in which we affirmed gambling restrictions based on the nature of Kroll's offense (issuing bad checks), his evident "lure to easy money-making schemes," the fact that he had been charged with issuing or negotiating a bad check on multiple prior occasions, and the fact that he owed in excess of $13,000 in restitution and held no job. *See Kroll*, ¶¶ 30-31. The State characterizes Lessard as someone who "wants something for nothing" and "does not care who he hurts to get it." The State also points out that Lessard owes two of

13

his victims $850 but has "limited means" with which to pay this (according to the PSI, he was unemployed and his only income was $623 per month in Social Security Disability Insurance benefits).

¶34 We cannot agree that these assertions establish a nexus between Condition 20 and either Lessard's offense of stealing carved bears or his individual background and characteristics. Aside from Lessard's statement that he gambles "[f]ive dollars once every two, three weeks," there is nothing in the record even suggesting that he has a history of gambling, that he stole the carved bears as part of an "easy money-making scheme," or that he has failed in the past to fulfill financial obligations. Lessard's "limited means" and his statement about gambling "[f]ive dollars once every two, three weeks" are not sufficient to establish a recent, and significant or chronic gambling or money-management problem.

¶35 The State suggests that Condition 20 facilitates the State's effort to ensure timely payment of restitution. Yet, while a restitution obligation is indeed a component of an offender's rehabilitation, *see Armstrong*, ¶ 11, the Legislature has provided a separate mechanism for ensuring that the restitution is paid, *see* §§ 46-18-244 to -249, MCA. The mere existence of a restitution obligation—without any evidence in the record that the offender has a history of gambling or financial irresponsibility—is insufficient to justify a gambling condition on the sentence.

¶36 We conclude that Condition 20 is not reasonably related to Lessard's offense of theft, is not necessary to ameliorate a problem with gambling, and is not likely to protect

14

society from further bouts of stealing carved bears. Accordingly, Condition 20 is illegal and must be stricken.

## CONCLUSION

¶37 We conclude that the alcohol and gambling conditions were too much, that no conditions would be too little, and that the drug-testing condition was just right. Accordingly, we reverse the District Court's imposition of Conditions 9 and 20. In addition, we reverse Condition 10's alcohol-testing requirement, but we affirm Condition 10's drug-testing requirement. We remand this matter to the District Court with instructions to strike the illegal conditions from Lessard's sentence.

¶38 Affirmed in part, reversed in part, and remanded with instructions.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice John Warner concurs.

¶39 I agree with the result of the Court's opinion. In this case the record is insufficient to sustain Conditions 9 and 20 of Lessard's deferred sentence. However, this is not to say that a probation restriction on possessing or ingesting alcohol cannot be justified when the offender has a proven history of abuse of a different intoxicant, such as

15

methamphetamine or marijuana. *See State v. Winkel*, 2008 MT 89, ¶¶ 15, 16, 342 Mont. 267, ¶¶ 15, 16, 182 P.3d 54, ¶¶ 15, 16.

¶40    With this proviso, I concur in the Court's opinion.


                                                    /S/ JOHN WARNER