DA 07-0026, DA 07-0027

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 390

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JAMES MICHAEL STILES,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 06-252
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James B. Wheelis, Chief Appellate Defender; Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, Mark W. Mattioli,
Assistant Attorney General; Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney, Margaret Gallagher,
Deputy County Attorney; Billings, Montana

Submitted on Briefs:  August 6, 2008

Decided:  November 20, 2008

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     James Michael Stiles (Stiles) appeals from the sentence imposed in the Thirteenth Judicial District, Yellowstone County, following his conviction for felony theft. We reverse and remand with instructions.

¶2     We restate the issue as follows:

¶3     Did the District Court impose improper probation conditions on Stiles?

## BACKGROUND

¶4     In late December 2004, Stiles began negotiating by phone and email with a Wyoming car dealership regarding the purchase of a Chevrolet Monte Carlo Intimidator. The car dealership ultimately shipped the vehicle to Stiles in Billings, and Stiles told them that his credit union in California had issued a check to the dealership. In late January 2005, the car salesman contacted Stiles because the dealership had not received payment for the vehicle. Stiles assured the salesman that the credit union had issued the check and also informed the salesman that Stiles would be unable to get another check issued until the first one was located. Stiles, however, was not a member of the credit union, nor did he have access to any accounts at the credit union.

¶5     On September 6, 2006, a jury convicted Stiles of felony theft. The District Court sentenced Stiles to fifteen years at Montana State Prison, with five years suspended, and the court ordered Stiles to pay restitution to the car dealership. The District Court designated Stiles a persistent felony offender. The District Court also revoked a previously suspended sentence and sentenced Stiles to five years at Montana State Prison

2

to run consecutive with his other sentence for felony theft. Additionally, the court imposed several probation conditions, including the following:

> 10. The Defendant will not possess or use illegal drugs or any drugs unless prescribed by a licensed physician. The Defendant will not be in control of or under the influence of illegal drugs, nor will he have in his possession any drug paraphernalia.
>
> .   .   .
>
> 12. The Defendant shall not possess or consume intoxicants/alcohol, nor will he enter any place intoxicants are the chief item of sale. He will submit to Breathalyzer testing or bodily fluid testing for drugs or alcohol as requested by his Probation & Parole Officer.
>
> .   .   .
>
> 20. The Defendant shall not possess or use any electronic device or scanner capable of listening to law enforcement communications.
>
> .   .   .
>
> 21. The Defendant will not enter any casinos or play any games of chance. *The Court makes the exception for employment purposes.*
>
> .   .   .
>
> 26. The Defendant will submit to random or routine drug and/or alcohol testing.

¶6   Stiles objected to several of the probation conditions, including condition 12. The District Court struck two of the conditions, but imposed condition 12. Stiles did not object to conditions 10, 20, 21, and 26. At Stiles' request, the District Court included a work exception to condition 21. Stiles now appeals the District Court's imposition of conditions 10, 12, 20, 21, and 26.

## STANDARD OF REVIEW

¶7   We review probation conditions under a dual standard of review: we first review de novo the legality of the probation conditions; we then review the conditions' reasonableness for abuse of discretion. *State v. Brotherton*, 2008 MT 119, ¶ 10, 342

3

Mont. 511, ¶ 10, 182 P.3d 88, ¶ 10; *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, ¶ 9, 179 P.3d 1164, ¶ 9.

## DISCUSSION

¶8 **Did the District Court impose improper probation conditions on Stiles?**

¶9 Stiles argues that no evidence linked his felony theft charge to the use of alcohol, illegal drugs, gambling, or scanning devices, and thus, we should strike those probation conditions from his sentence. The State maintains that Stiles failed to object to several of the probation conditions and that the District Court acted within its discretion when it imposed the conditions.

¶10 In addition to the statutorily enumerated conditions, a sentencing court may impose "reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society" on a deferred or suspended sentence. Section 46-18-201(4)(o), MCA; *accord*; § 46-18-202(1)(f), MCA. For these "reasonable restrictions or conditions" to constitute proper probation conditions, a nexus must exist between the probation conditions and the offense or the offender. *Ashby*, ¶ 15. A court may impose offender-related conditions only when "the history or pattern of conduct to be restricted is recent, and significant or chronic." *Ashby*, ¶ 15.

¶11 Stiles did not object to probation conditions 10, 20, 21, and 26 at the district court level. We generally refuse to address issues raised for the first time on appeal, including probation conditions. *Ashby*, ¶ 22. The *Lenihan* decision, however, permits appellate review of a criminal sentence that is allegedly illegal or that exceeds statutory mandates,

4

even if the defendant failed to object at the district court level. *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979). A sentence that falls within the statutory parameters constitutes a legal sentence. *State v. Mingus*, 2004 MT 24, ¶ 10, 319 Mont. 349, ¶ 10, 84 P.3d 658, ¶ 10. A sentencing court's failure to abide by certain statutory requirements may result in an objectionable sentence; however, an objectionable sentence is not necessarily an illegal sentence. *State v. Nelson*, 274 Mont. 11, 20, 906 P.2d 663, 668 (1995).

¶12 We have referred to probation conditions that lack a nexus to the offense or the offender as illegal. *See e.g. State v. Lessard*, 2008 MT 192, ¶¶ 27, 36, 344 Mont. 26, ¶¶ 27, 36, 185 P.3d 1013, ¶¶ 27, 36; *State v. Marshall*, 2007 MT 218, ¶ 20, 339 Mont. 50, ¶ 20, 70 P.3d 923, ¶ 20. Nonetheless, we have treated our review of conditions such as the ones that Stiles challenges as objectionable rather than illegal. For example, in *State v. Ommundson*, the defendant appealed from two conditions of his DUI sentence, though he objected to only one condition at the district court level. 1999 MT 16, ¶ 2, 293 Mont. 133, ¶ 2, 974 P.2d 620, ¶ 2, *overruled on other grounds; State v. Herman*, 2008 MT 187, 343 Mont. 494, 188 P.3d 494; *modified; Ashby*, ¶ 15. We specifically refused to review the unchallenged condition in light of Ommundson's failure to object at the district court level. *Ommundson*, ¶ 2.

¶13 In *Ashby*, we announced a new standard of review for sentencing conditions:

> We will first review a sentencing condition for legality. Then, because sentencing statutes authorize sentencing judges to impose conditions on deferred or suspended sentences that constitute "reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of

5

the victim or society," the "reasonableness" of such conditions will be reviewed for an abuse of discretion.

*Ashby*, ¶ 9. As our "final cautions" in *Ashby* highlight, this new standard effectively places the nexus analysis under the second inquiry—whether the district court abused its discretion. *Ashby*, ¶¶ 22, 23. Though we acknowledged the availability of *Lenihan* review for unchallenged "illegal, rather than objectionable" conditions, we cautioned defendants that the right to challenge an improper condition disappears unless they object "at or before sentencing . . . ." *Ashby*, ¶ 22. We further stated that, "*upon proper objection* by the defendant," we would "not hesitate to strike" alcohol, gambling, and other similar conditions that bore no nexus to the offense or the offender. *Ashby*, ¶ 23 (emphasis added).

¶14   In *Ashby*, we examined whether a nexus existed between the challenged conditions and Ashby, or Ashby's offense. Implicit in our nexus analysis was our determination that the conditions passed the threshold question of legality. The probation conditions that Stiles challenges are similar to those objected to in the trial court and reviewed on appeal in *Ashby*, in that the conditions were imposed under the "reasonable restrictions or conditions" relating to rehabilitation and the protection of the victim and society as set forth in § 46-18-201(4)(o), MCA, and § 46-18-202(1)(f), MCA. In this case, Stiles failed to object to conditions 10, 20, 21, and 26 in the trial court. Consequently, pursuant to *State v. Kotwicki*, 2007 MT 17, 335 Mont. 344, 151 P.3d 892, and *Ashby*, ¶ 22, we refuse to consider his arguments regarding whether the offense—or offender—nexus existed here.

6

¶15 Condition 12 prohibits Stiles from possessing or consuming intoxicants and from frequenting businesses where intoxicants constitute the chief sale item. Condition 12 also subjects Stiles to drug and alcohol testing. Stiles argues that no connection exists between this condition and his felony theft charge. The State does not contend that a nexus exists between this condition and Stiles' offense; rather, the State argues that Stiles has a history of substance abuse and that a clear relationship exists between substance abuse and recidivism. The State further asserts that preventing Stiles from drinking and frequenting bars will enable him to more easily satisfy his restitution obligation.

¶16 The PSI report indicates that Stiles began drinking around the age of fifteen and that his drinking contributed to him "dropping out" of school during the tenth grade. The report also indicates that Stiles was intoxicated when he committed a felony offense in 1983. Additionally, Stiles was diagnosed with substance abuse in 1986. Though we do not minimize Stiles' experiences with alcohol, a court may impose offender-related conditions only when "the history or pattern of conduct to be restricted is recent, and significant or chronic." *Ashby*, ¶ 15. Stiles was forty-eight years old at sentencing. The PSI report indicates that Stiles' problems with alcohol, although significant, are not recent. Thus, we conclude that condition 12 has an insufficient nexus to Stiles and is improper.

**CONCLUSION**

¶17 We conclude that the probation conditions included in Stiles' sentence fall within the sentencing court's discretion under § 46-18-201(4)(o), MCA, and § 46-18-202(1)(f),

7

MCA. Thus, Stiles' failure to object to conditions 10, 20, 21, and 26 bars our review of those probation conditions. We further conclude that no nexus exists between Condition 12 and Stiles' offense of felony theft or Stiles himself. Thus, we reverse the District Court's imposition of Condition 12, and we remand to the District Court with instructions to strike the condition from Stiles' sentence.

¶18 Reversed and remanded with instructions.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ JOHN WARNER

Justice James C. Nelson, concurring in part and dissenting in part.

¶19 I concur in the Court's decision to reverse the District Court's imposition of Condition 12. I dissent, however, from the Court's treatment of the other four conditions challenged by Stiles and, more generally, from the Court's new approach with respect to reviewing the legality of sentencing conditions.

¶20 Stiles challenges five conditions imposed by the District Court on his suspended sentence: no drugs or drug paraphernalia (Condition 10); no alcohol or intoxicants, plus

mandatory testing for drugs and alcohol (Condition 12); no electronic scanning devices (Condition 20); no casinos or games of chance (Condition 21); and random or routine testing for drugs and alcohol (Condition 26). When this Court reviews a condition on a deferred or suspended sentence, "the threshold question is whether the imposition of [the condition] constituted an illegal sentencing condition." *State v. Nelson*, 2008 MT 359, ¶ 27, ___ Mont. ___, ¶ 27, ___, P.3d ___, ¶ 27 (citing *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, ¶ 9, 179 P.3d 1164, ¶ 9). If the condition is legal, we then determine whether the district court abused its discretion in imposing the condition. *Nelson*, ¶ 20 (citing *Ashby*, ¶ 9).

¶21 The Court acknowledges that this is our established approach. Opinion, ¶ 7 ("[W]e first review de novo the legality of the probation conditions; we then review the conditions' reasonableness for abuse of discretion."). The Court further acknowledges that we review a probation condition that is allegedly illegal *even if* the defendant failed to object to the condition in the district court. Opinion, ¶ 11 (citing *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979)). For this reason, Stiles is entitled to have Conditions 10, 12, 20, 21, and 26 reviewed for legality.

¶22 The Court, however, fails to provide a cogent analysis of whether these conditions are legal. The Court merely offers the conclusory and nebulous observation that the conditions Stiles challenges "are similar to" those we reviewed in *Ashby*. Opinion, ¶ 14. In this connection, the Court notes that the probation conditions at issue in *Ashby* "implicit[ly]" passed the threshold question of legality, apparently because they were

9

imposed pursuant to §§ 46-18-201(4)(o) and -202(1)(f), MCA. Opinion, ¶ 14. These statutes authorize a sentencing court to impose on a deferred or suspended sentence any reasonable restrictions or conditions related to the objectives of rehabilitation and the protection of the victim or society. Thus, what the Court effectively holds today is that any probation condition that is "similar to" those we reviewed in *Ashby* and that was imposed pursuant to § 46-18-201(4)(o), MCA, or § 46-18-202(1)(f), MCA, is per se legal.

¶23 I disagree with this approach for two reasons. First, the Court errs in holding that a condition is per se legal simply because it is "similar to" those we reviewed in *Ashby* and was imposed pursuant to § 46-18-201(4)(o), MCA, or § 46-18-202(1)(f), MCA. Second, in adopting this new approach to legality review, the Court explicitly relegates our traditional legality test—the nexus test—to the second, abuse of discretion prong of our standard of review. Opinion, ¶ 13. In other words, the Court holds that the nexus requirement is a limit on the sentencing court's *discretion*, not its *authority*. For the reasons which follow, this new approach contradicts years of precedent and is inconsistent with the language of the statutes.

¶24 It is beyond dispute that a sentencing judge "has no power to impose a sentence in the absence of specific statutory authority." *State v. Hatfield*, 256 Mont. 340, 346, 846 P.2d 1025, 1029 (1993); *accord State v. Hicks*, 2006 MT 71, ¶ 41, 331 Mont. 471, ¶ 41, 133 P.3d 206, ¶ 41. Accordingly, when a challenge to a sentencing condition is raised,

the "threshold question," as noted above, is whether the condition is statutorily authorized.

¶25 There are no provisions in the sentencing statutes explicitly authorizing conditions of the sort at issue here—namely, no drugs, no alcohol, no gambling and casinos, no electronic scanning devices, and mandatory alcohol and drug testing. Rather, the presumed authority to impose these conditions is found in §§ 46-18-201(4)(o) and -202(1)(f), MCA. *See* Opinion, ¶¶ 10, 14. The former authorizes a sentencing judge to impose "any . . . reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society." Section 46-18-201(4)(o), MCA. Similarly, the latter authorizes a sentencing judge to impose "any . . . limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society." Section 46-18-202(1)(f), MCA.

¶26 The authority to impose "reasonable" restrictions that are "necessary for" or "reasonably related to" the objectives of rehabilitation and the protection of the victim or society is certainly broad. Before today, however, that authority has not been without limit. Indeed, we stated exactly that in *State v. Ommundson*, 1999 MT 16, 293 Mont. 133, 974 P.2d 620: "Although this grant of sentencing authority is broad, it is not without limit." *Ommundson*, ¶ 11. Consequently, in order to determine whether a condition imposed pursuant to § 46-18-201(4)(o), MCA, or § 46-18-202(1)(f), MCA, is statutorily authorized, we must first determine what the "limit" on the authority granted by these statutes is.

11

¶27 The answer to this question is not immediately obvious, since the authority granted by §§ 46-18-201(4)(o) and -202(1)(f), MCA, is totally amorphous. What makes a condition "reasonable" and "necessary for" or "reasonably related to" the objectives of rehabilitation and the protection of the victim or society? Clearly, the answer to this question varies from case to case. Thus, unlike conditions whose legality can be assessed facially by asking, "Is there statutory authority for this condition?" (*see e.g. State v. Stephenson*, 2008 MT 64, ¶¶ 14-33, 342 Mont. 60, ¶¶ 14-33, 179 P.3d 502, ¶¶ 14-33), determining the legality of conditions imposed under § 46-18-201(4)(o), MCA, or § 46-18-202(1)(f), MCA, by contrast, necessarily requires some sort of test that applies legal standards to factual underpinnings.

¶28 We articulated that test in *Ommundson*:

> We hold that, in order to be "reasonably related to the objectives of rehabilitation and protection of the victim and society," a sentencing limitation or condition must have . . . some correlation or connection to the underlying offense for which the defendant is being sentenced.

*Ommundson*, ¶ 11 (citation omitted). Thus, we held in *Ommundson* that the "limit" on a sentencing court's "broad" authority to impose a "reasonable" restriction in the name of offender rehabilitation and the protection of the victim or society is this: a "correlation or connection" (also referred to as a "nexus") must exist between the condition and the underlying offense for which the defendant is being sentenced. Accordingly, a condition that does not have a nexus to the underlying offense is not reasonably related to the objectives of rehabilitation and protection of the victim or society and, thus, is not statutorily authorized. *See McDermott v. McDonald*, 2001 MT 89, ¶ 18, 305 Mont. 166,

12

¶ 18, 24 P.3d 200, ¶ 18 ("The 'correlation or connection' standard, therefore, was based on a specific statutory limitation on the district court's sentencing authority."). And if the condition is not statutorily authorized, it is not legal. *See State v. Brotherton*, 2008 MT 119, ¶ 10, 342 Mont. 511, ¶ 10, 182 P.3d 88, ¶ 10 ("A sentencing condition is illegal if the sentencing court lacked statutory authority to impose it . . . .").

¶29 Following *Ommundson*, we repeatedly reaffirmed that to be "legal," a condition of sentence must have a "nexus" to the underlying offense. In *State v. Armstrong*, 2006 MT 334, 335 Mont. 131, 151 P.3d 46, for instance, we explained that "a limitation or condition in a sentence must have a correlation or connection to the underlying offense. Stated differently, to be legal, a condition of sentence must have a nexus to the conviction." *Armstrong*, ¶ 11 (citation omitted); *accord State v. Marshall*, 2007 MT 218, ¶ 20, 339 Mont. 50, ¶ 20, 170 P.3d 923, ¶ 20. Likewise, in *State v. Herd*, 2004 MT 85, 320 Mont. 490, 87 P.3d 1017, we acknowledged that "a condition of sentence must have a nexus with the conviction in order for it to be a legal condition of sentence." *Herd*, ¶ 17; *accord State v. Greeson*, 2007 MT 23, ¶ 12, 336 Mont. 1, ¶ 12, 152 P.3d 695, ¶ 12. Similarly, in *State v. Lucero*, 2004 MT 248, 323 Mont. 42, 97 P.3d 1106, we observed that "in order to be 'reasonably related to the objectives of rehabilitation and protection of the victim and society,' as required by § 46-18-202(1)(e), MCA, a sentencing limitation or condition must have some correlation to the underlying offense for which the defendant is being sentenced." *Lucero*, ¶ 30. And, in *State v. McIntire*, 2004 MT 238, 322 Mont. 496, 97 P.3d 576, we held that the sentencing court had "statutory authority"

under § 46-18-202(1)(f), MCA, to order the defendant to pay restitution because there was a "connection and correlation" between his offense and the pecuniary loss to the victim. *McIntire*, ¶¶ 18-19. But in *State v. Horton*, 2001 MT 100, 305 Mont. 242, 25 P.3d 886, and *State v. Setters*, 2001 MT 101, 305 Mont. 253, 25 P.3d 893, we held that the sentencing court had "exceeded its statutory authority" in making the payment of child support (*Horton*) and restitution (*Setters*) a condition of sentence, since there was no "correlation or connection" between the underlying offenses and these conditions. *Horton*, ¶¶ 28-29; *Setters*, ¶¶ 27-28; *accord State v. Erickson*, 2005 MT 276, ¶ 37, 329 Mont. 192, ¶ 37, 124 P.3d 119, ¶ 37.

¶30    In *State v. Ashby*, 2008 MT 83, 342 Mont. 187, 179 P.3d 1164, we concluded that it was appropriate to "expand *Ommundson*'s 'nexus' rule to include a nexus to either the offense or the offender, rather than to the offense alone." *Ashby*, ¶ 7. First, we recited the *Ommundson* rule:

> "Although this grant of sentencing authority [to impose limitations 'reasonably related to the objectives of rehabilitation and the protection of the victim and society'] is broad, it is not without limit. We hold that, in order to be 'reasonably related to the objectives of rehabilitation and protection of the victim and society,' . . . a sentencing limitation or condition must have . . . some correlation or connection to the underlying offense for which the defendant is being sentenced."

*Ashby*, ¶ 14 (ellipses in *Ashby*) (quoting *Ommundson*, ¶ 11). We then held that a sentencing judge may impose a particular condition of probation so long as the condition has a nexus either to the offense for which the offender is being sentenced or to the offender himself or herself. *Ashby*, ¶ 15. Essentially, we decided that our original

14

interpretation in *Ommundson* of a sentencing court's authority under §§ 46-18-201(4)(o) and -202(1)(f), MCA, had been too narrow.

¶31 Accordingly, after *Ashby*, the authority of a sentencing court to impose a "reasonable" restriction in the name of offender rehabilitation and the protection of the victim or society is still "not without limit," but the authority is not as limited as it was under *Ommundson*. Now, the sentencing court has authority to impose a restriction that has a nexus either to the underlying offense for which the defendant is being sentenced or to the offender himself or herself. *Ashby*, ¶ 15. The existence of this nexus determines whether the sentencing court exceeded its statutory authority and, thus, whether the condition at issue is illegal. Indeed, we applied the nexus test precisely for this purpose in several post-*Ashby* cases.

¶32 In *State v. Winkel*, 2008 MT 89, 342 Mont. 267, 182 P.3d 54, Winkel claimed that the condition prohibiting him from possessing or ingesting intoxicants was "illegal" because alcohol played no role in his offense. *Winkel*, ¶ 13. We concluded otherwise, reasoning that because the condition "has a nexus to both the underlying crime and the offender," the condition "is within the parameters set by § 46-18-202(1)(f), MCA." *Winkel*, ¶ 16. We reached the same conclusion with respect to the no-casinos condition, stating that it "is also within the parameters set by § 46-18-202(1)(f), MCA, and *Ommundson*." *Winkel*, ¶ 20. Our use of the word "parameters" in relation to our analysis under the nexus test indicates unmistakably that we were using that test to determine whether the condition was legal, not whether the district court had abused its discretion in

15

imposing it. *See State v. Hameline*, 2008 MT 241, ¶ 8, 344 Mont. 461, ¶ 8, 188 P.3d 1052, ¶ 8 ("We review a sentencing condition for legality, determining whether the condition is within statutory parameters.").

¶33   In *State v. Deshazo*, 2008 MT 131, 343 Mont. 77, 183 P.3d 47, and *State v. Teets*, 2008 MT 130, 343 Mont. 73, 183 P.3d 45, the defendants contended that the alcohol restrictions on their sentences constituted "illegal" conditions because alcohol had no relation to their respective underlying offenses. *Deshazo*, ¶ 9; *Teets*, ¶ 10.  We rejected these contentions based on our application of the nexus test.  *See Deshazo*, ¶¶ 10-12; *Teets*, ¶¶ 11-12.  We also applied the nexus test to determine whether the conditions at issue were "illegal" in *In re D.A.S.*, 2008 MT 168, 343 Mont. 360, 184 P.3d 349, *State v. Greensweight*, 2008 MT 185, 343 Mont. 474, 187 P.3d 613, *State v. Lessard*, 2008 MT 192, 344 Mont. 26, 185 P.3d 1013, and *State v. Hinkle*, 2008 MT 217, 344 Mont. 236, 186 P.3d 1279.  *See D.A.S.*, ¶¶ 9-15; *Greensweight*, ¶¶ 21, 23, 29; *Lessard*, ¶¶ 21-27, 32, 36; *Hinkle*, ¶¶ 17-20.

¶34   In *State v. Brotherton*, 2008 MT 119, 342 Mont. 511, 182 P.3d 88, we observed that §§ 46-18-201(4)(n) and -202(1)(f), MCA (2005), were the statutory authority for the no-intoxicants condition at issue. *Brotherton*, ¶ 14.  We then explained that in order to be authorized by these statutes, the condition must have a nexus either to the offense for which the offender is being sentenced or to the offender himself or herself.  *See Brotherton*, ¶¶ 15-17.  We then proceeded to analyze the condition, concluding that it "has a sufficient nexus to Brotherton's unique background and characteristics," that it

16

thus "is a reasonable restriction necessary for Brotherton's rehabilitation," and that it accordingly "is legal under §§ 46-18-201(4) and -202(1)(f), MCA." *Brotherton*, ¶ 24. Thereafter, we further observed that, "in light of the factual circumstances of this case, . . . the District Court did not abuse its discretion in imposing this condition." *Brotherton*, ¶ 24.

¶35 It makes logical sense to use the nexus test for determining whether a challenged condition is legal under §§ 46-18-201(4)(o) and -202(1)(f), MCA—i.e., whether it is a "reasonable" restriction "necessary for" or "reasonably related to" the objectives of rehabilitation and the protection of the victim or society—and then to apply the abuse of discretion standard for determining whether the condition is excessive in terms of harshness or duration. Indeed, that is exactly the approach we adopted in *State v. Herd*, 2004 MT 85, 320 Mont. 490, 87 P.3d 1017.

¶36 In *Herd*, the district court gave the defendant two 20-year suspended sentences, to run consecutively. One of the conditions on the sentences barred Herd from driving a motor vehicle during the entire 40-year term. *See Herd*, ¶ 9. Herd challenged this condition on appeal. At the outset, we noted that "a condition of sentence must have a nexus with the conviction in order for it to be a legal condition of sentence." *Herd*, ¶ 17 (citing, among others, *Ommundson*, ¶ 11). Herd conceded that the driving restriction was legal, since there was a nexus between this condition and her underlying offense of negligent homicide (which had resulted from her lack of care while driving). *Herd*, ¶¶ 17, 24. Instead, Herd argued that the length of the driving suspension, while not

17

explicitly forbidden by statute, was excessive. *Herd*, ¶ 24. She asked this Court "to determine whether a condition of sentence can bear a relationship to the underlying offense, yet exceed reasonableness in its harshness or duration." *Herd*, ¶ 17. We answered this question in the affirmative. We concluded that imposition of a 40-year driving prohibition would ultimately impair the prospects of Herd's rehabilitation by drastically inhibiting her ability to make a living, to serve the needs of her family, and to pay court-ordered restitution. We accordingly held that the district court had abused its discretion in imposing this "lengthy" restriction on Herd's ability to drive. *Herd*, ¶ 25.

¶37 Thus, to summarize, we have long applied the nexus test to determine whether a condition of sentence is legal—i.e., whether it is "necessary for" or "reasonably related to" the objectives of rehabilitation and the protection of the victim or society, §§ 46-18-201(4)(o) and -202(1)(f), MCA—and we have applied the abuse of discretion standard to determine whether the condition is excessive in terms of its harshness or duration.

¶38 Notwithstanding these decisions and our unambiguous statement in *Ommundson* that a sentencing court's broad authority under §§ 46-18-201(4)(o) and -202(1)(f), MCA, is "limited" by the nexus requirement, the Court today announces an entirely new approach. Specifically, the Court holds that the nexus test determines whether the sentencing court abused its discretion in imposing the challenged condition, not whether the condition is statutorily authorized in the first place. Opinion, ¶ 13. Yet, in abandoning our traditional test for determining legality, the Court provides nothing

18

constructive in its stead, i.e., no practical method for determining whether a condition falls within the parameters of §§ 46-18-201(4)(o) and -202(1)(f), MCA. The Court simply states that any probation condition which is "similar to" those we reviewed in *Ashby* and which was imposed under these statutes is legal. Opinion, ¶¶ 14, 17. In so doing, the Court implicitly rejects the notion that a no-alcohol, a no-gambling, or a drug-testing condition might be legal in some cases and illegal in others. Moreover, the Court effectively rewrites ¶ 11 of *Ommundson* to say: "The grant of sentencing authority to impose limitations 'reasonably related to the objectives of rehabilitation and the protection of the victim and society' is broad, *and it is without limit*."

¶39 The Court attempts to recast *Ommundson* as resting on something other than legality grounds. Opinion, ¶ 12. The Court points out that we refused to review a condition to which Ommundson did not object in the district court. *See Ommundson*, ¶ 2. Yet, after stating that we would not review this particular condition, we then stated the issue before us as follows: "The sole issue before this Court, then, is whether the District Court had *authority* to impose the condition that Ommundson participate in a sex offender treatment program." *Ommundson*, ¶ 2 (emphasis added). It is abundantly clear from this statement that our analysis in *Ommundson* concerned a sentencing court's "authority" under the statutes. Indeed, we have previously explained our holding in *Ommundson* as follows:

> In *Ommundson,* this Court held that the statutory requirement that a sentence be "reasonably related to the objectives of rehabilitation and protection of the victim and society," requires that any sentencing limitation or condition have some "correlation or connection to the

19

> underlying offense for which the defendant is being sentenced."
> *Ommundson*, ¶ 11. *The "correlation or connection" standard, therefore, was based on a specific statutory limitation on the district court's sentencing authority.*

*McDermott v. McDonald*, 2001 MT 89, ¶ 18, 305 Mont. 166, ¶ 18, 24 P.3d 200, ¶ 18 (emphasis added).

¶40 The Court cites ¶¶ 9, 22, and 23 of *Ashby* in support of its new approach. *See* Opinion, ¶ 13. Admittedly, there is language in these paragraphs which could be interpreted as placing the nexus test under the second, abuse of discretion prong of our standard of review. However, that is not how I understood *Ashby* at the time I signed it— as my opinions, for a unanimous Court, in *Brotherton*, *Greensweight*, and *Lessard* reflect. Moreover, there is nothing in *Ashby* to suggest that we were consciously, deliberately, and explicitly abandoning nine years of applying the nexus analysis as a legality test— which the Court confirms today by its use of the word "implicit" to describe our reasoning in *Ashby*. *See* Opinion, ¶ 14. It is troubling to think that we would abandon our well-settled approach with no supporting analysis or explanation whatsoever, particularly since we had just reaffirmed that approach twice during the previous year. *See State v. Greeson*, 2007 MT 23, ¶ 12, 336 Mont. 1, ¶ 12, 152 P.3d 695, ¶ 12 ("[A] probation condition must have a sufficient nexus with the conviction to constitute a legal condition of sentence."); *State v. Marshall*, 2007 MT 218, ¶ 20, 339 Mont. 50, ¶ 20, 170 P.3d 923, ¶ 20 ("[T]o be legal, a condition of sentence must have a nexus to the conviction."). Rather, the primary purpose of our *Ashby* decision was to expand the nexus test to include the *offender*, not just the *offense*. Given that *Ashby* did not involve a

20

challenge to a probation condition to which the appellant had not objected in the district court, it is clear that the Court today overreads *Ashby*'s actual holding and transforms dicta into law.

¶41 The Court's confusion appears to derive from the Legislature's use of the terms "reasonable" in § 46-18-201(4)(o), MCA ("any other reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society"), and "reasonably related" in § 46-18-202(1)(f), MCA ("any other limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society"). These statutes contain a "reasonableness" requirement built in to the authority granted to the sentencing court. In other words, "reasonableness" itself is the explicit statutory limit on the sentencing court's authority. Our nexus test has long been the measure of that reasonableness, which the Court acknowledges in ¶ 10 of the Opinion. Accordingly, when we apply the nexus test, we are essentially determining whether the condition falls within the parameters of §§ 46-18-201(4)(o) and -202(1)(f), MCA, not whether the sentencing court abused its discretion.

¶42 It is for this reason that the following statement in *Ashby* (which the Court quotes in ¶ 13 of the Opinion) is somewhat inaccurate:

> [B]ecause sentencing statutes authorize sentencing judges to impose conditions on deferred or suspended sentences that constitute "reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society," the "reasonableness" of such conditions will be reviewed for an abuse of discretion.

21

*Ashby*, ¶ 9 (footnote omitted). It is self-evident that if the sentencing statutes "authorize" only those conditions which are "reasonable" and "necessary for rehabilitation or for the protection of the victim or society," then any conditions which are not "reasonable" and "necessary for rehabilitation or for the protection of the victim or society" are not authorized by these statutes. This is a matter of legality—not discretion—since a sentencing court has discretion to impose only those conditions that are statutorily authorized in the first place. Thus, it makes no sense to say, as the Court does today, that the question of whether the challenged condition meets the statutory requirements of being "reasonable" and "necessary for rehabilitation or for the protection of the victim or society" is reviewed for an abuse of discretion. If it does not meet these explicit statutory requirements, then it is illegal and need not be reviewed for abuse of discretion.

¶43 In sum, we review a sentencing condition for legality by determining whether it is statutorily authorized and within statutory parameters. *Brotherton*, ¶ 10; *Hameline*, ¶ 8. The parameters of §§ 46-18-201(4)(o) and -202(1)(f), MCA, are set forth in these statutes: The condition must be "reasonable" and "necessary for" or "reasonably related to" the objectives of rehabilitation and the protection of the victim or society. These are the actual words used in the statutory language defining the authority of the sentencing court. We interpreted and gave concrete meaning to these parameters in *Ommundson* by requiring a nexus between the condition and the underlying offense. We reinterpreted these parameters in *Ashby* and concluded that they include a nexus between the condition and the offender as well. Sentencing courts, therefore, have had a clear and unambiguous

22

statement from this Court as to what conditions fall within the statutory parameters of §§ 46-18-201(4)(o) and -202(1)(f), MCA: a condition having a nexus to either the underlying offense or the offender is within statutory parameters, and a condition not having a nexus to either the underlying offense or the offender is outside statutory parameters. After today's decision, however, there is no sensible test at all to tell us whether a condition imposed pursuant to § 46-18-201(4)(o), MCA, or § 46-18-202(1)(f), MCA, falls outside statutory parameters and, thus, is illegal.

¶44 Admittedly, whether our nexus test is applied under the first, legality prong or the second, abuse of discretion prong of our standard of review ultimately makes little difference in run-of-the-mill cases where the defendant has objected to the condition in the district court. But in a case such as the one at hand, where the defendant did *not* object to the condition, relegation of the nexus test to the second prong of our standard of review makes all the difference. The ultimate result of today's decision is that Stiles receives no real review whatsoever—neither for legality nor for abuse of discretion—of Conditions 10, 20, 21, and 26. He is not entitled to review for abuse of discretion because he did not object to these conditions in the District Court (a point of the Court's Opinion with which I agree). But he *is* entitled to review for legality. Opinion, ¶ 11. Yet, he is not receiving proper legality review since we no longer have a workable test for determining whether a condition imposed under § 46-18-201(4)(o), MCA, or § 46-18-202(1)(f), MCA, falls within statutory parameters.

23

¶45 Notably, in making his argument to this Court, Stiles relies on our statement in *State v. Greeson*, 2007 MT 23, 336 Mont. 1, 152 P.3d 695, that "a probation condition must have a sufficient nexus with the conviction to constitute a legal condition of sentence," *Greeson*, ¶ 12, and our statement in *State v. Armstrong*, 2006 MT 334, 335 Mont. 131, 151 P.3d 46, that "to be legal, a condition of sentence must have a nexus to the conviction," *Armstrong*, ¶ 11. Indeed, he quotes this language in his brief as support for his claim that Conditions 10, 12, 20, 21, and 26 are "illegal" because they "had no nexus to the facts of this case." The Court, however, announces that we did not mean what we actually said in *Greeson*, *Armstrong*, and the myriad cases stating the same rule. Rather, according to the Court, what we meant in all those cases—though we did not actually say it—was that the nexus requirement is a limit on *discretion*, not *legality*. Opinion, ¶¶ 12-13. On this basis, the Court dismisses Stiles's nexus arguments with respect to all but Condition 12. I cannot agree with this bait and switch.

¶46 Lastly, while I disagree with the Court's decision to relegate our nexus test to the abuse of discretion prong of our standard of review, it concerns me more that the Court leaves a gaping void in the legality prong where the nexus test once stood. If the nexus test no longer determines whether the challenged condition is statutorily authorized, then this Court must supply a workable replacement or articulate a new interpretation of the statutory parameters as we did in *Ommundson*. It is wholly inadequate to assert merely that the probation conditions Stiles challenges "are similar to those . . . reviewed on appeal in *Ashby*, in that the conditions were imposed under the 'reasonable restrictions or

24

conditions' relating to rehabilitation and the protection of the victim and society as set forth in § 46-18-201(4)(o), MCA, and § 46-18-202(1)(f), MCA." Opinion, ¶ 14.

¶47 It is also troubling that the Court creates confusion in our caselaw by ignoring the numerous cases which applied the nexus analysis as a legality test. While the Court attempts to recast the holdings of some of these cases as resting on abuse of discretion grounds (*see* Opinion, ¶ 12), the Court's assertions in this regard are not supported by the actual language of the cases. Rather, what the Court does here is implicitly overrule all of the cases discussed in ¶¶ 28-29 and 32-36 above.

¶48 In conclusion, at the time we decided *Ashby*, we were facing review of "numerous cases" seeking clarification or broadening of the *Ommundson* rule. *See Ashby*, ¶ 15. Indeed, throughout mid to late 2007, the State routinely asked this Court in probation-condition appeals either to overrule or to broaden the *Ommundson* rule. We accordingly undertook "detailed review and analysis" of the parties' arguments and the factual scenarios in each of those cases. *See Ashby*, ¶ 15. At the conclusion of this detailed review and analysis, we attempted—once and for all—to clarify exactly how this Court would review probation conditions. We then proceeded to apply that approach in several unanimous, post-*Ashby* decisions. Today, in one fell unanalyzed swoop, the Court undoes what we accomplished in *Ashby* and injects confusion back into our caselaw. As a result, we can expect to see yet more cases "seeking clarification" of the *Ommundson-Ashby* rule. What's more, we can expect to see the same arguments by the State that we rejected in *Ashby*—all based on the premise that sentencing courts have "unlimited"

25

authority to impose whatever conditions the prosecution and the Department of Corrections ask for and the court happens to agree with. Quite simply, we have taken the sideboards off the district courts' sentencing authority that we imposed in *Ommundson* and refined in *Ashby*.

¶49 Yet, §§ 46-18-201(4)(o) and -202(1)(f), MCA, do not give sentencing courts the authority to impose "any condition they want." Rather, the statutes give the courts authority to impose "reasonable" conditions that are "necessary for" and "reasonably related to" the objectives of rehabilitation and the protection of the victim or society. This statutory language is itself the "limit" on the authority of sentencing courts to impose conditions under these statutes. *Ommundson*, ¶ 11. The nexus test, as expanded in *Ashby*, was a sensible and workable interpretation of this limit. The rule of *Herd*— namely, reviewing a condition that is otherwise legal to determine if the condition is excessive in terms of harshness or duration—is a sensible and workable approach under the second prong of our standard of review. I disagree with the Court's conversion of the nexus test into a measure of discretion, leaving nothing in its stead for determining whether the challenged condition is legal in the first place.

¶50 I concur in the Court's decision to reverse the imposition of Condition 12. I dissent as to the remainder of the Court's Opinion.


/S/ JAMES C. NELSON