958 So.2d 1288 (2007)
Billy WELCH, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-CP-00057-COA.
Court of Appeals of Mississippi.
June 26, 2007.
*1289 Billy Welch, Appellant, pro se.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Billy Welch pled nolo contendere in the Pike County Circuit Court to harboring an escaped prisoner. The trial court sentenced him to serve five years, suspended, in the custody of the Mississippi Department of Corrections. Welch's probation was revoked, because he was three times in the company of a convicted felon. Welch filed a motion for post-conviction relief, which was denied. He appeals and argues: (1) the indictment was fatally defective "in using a witness statement that was threatened," (2) the indictment was fatally defective because he was not guilty, (3) his plea was involuntary, and (4) his probation was unlawfully revoked. We find no error and affirm.

STANDARD OF REVIEW
¶ 2. A trial court's denial of post-conviction relief will not be reversed absent a finding that the trial court's decision was clearly erroneous. Smith v. State, 806 So.2d 1148, 1150(¶ 3) (Miss.Ct.App.2002). However, when reviewing issues of law, this Court's proper standard of review is de novo. Brown v. State, 731 So.2d 595, 598(¶ 6) (Miss.1999).

ANALYSIS
I. Was the indictment fatally defective in using a witness statement that was threatened?
II. Was the indictment fatally defective for lack of evidence?
¶ 3. Since both of these issues challenge the sufficiency of the evidence supporting the indictment, we address them together.
¶ 4. Welch argues that he was innocent of harboring escaped prisoner Johnna T. Smith. He also claims that Smith's statement was insufficient to support the indictment, because she was coerced into giving the statement and has recanted. The State argues that these arguments are waived.
¶ 5. Welch pled nolo contendere. Generally, a nolo plea is not available for felonies in Mississippi. Bruno v. Cook, 224 So.2d 567, 568 (Miss.1969). However, a defendant waives any objections to its use when he (1) knowingly and intelligently requested permission to plead nolo, and (2) understood that the court considered it the equivalent of a guilty plea and could sentence him to the penitentiary. Id. Once accepted, the trial court and this Court will treat it as a guilty plea in the instant case. Id. at 569. The plea waives the "right to contest the truth of the charge," and the defendant "submits to the punishment." Id. Likewise, a guilty plea waives the right to challenge the sufficiency of the evidence. Boddie v. State, 875 So.2d 180, 183(¶ 7) (Miss.2004) (appropriate time to test evidence is at trial); Jefferson v. State, 556 So.2d 1016, 1019 (Miss.1989) (guilty plea waives right to trial). Therefore, Welch waived the arguments that the evidence was insufficient to indict him and that he was innocent.
*1290 III. Was Welch's plea voluntary?
¶ 6. Welch argues that his plea was involuntary, because he was not aware of the terms of the probation that the district attorney's office would recommend. Had Welch been aware, he alleges he would not have pled, because the terms interfered with his prison ministry. The State maintains Welch was aware of his rights and was informed of the terms of the probation.
¶ 7. A plea of guilty is binding only if it is entered voluntarily and intelligently. Myers v. State, 583 So.2d 174, 177 (Miss.1991). It is voluntary and intelligent when the defendant is informed of the charges against him and the consequences of his plea. Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992); Vittitoe v. State, 556 So.2d 1062, 1064 (Miss.1990). He must be told that a guilty plea involves a waiver of the right to a trial by jury, the right to confront adverse witnesses, and the right to protection against self incrimination. Boykin v. Alabama, 395 U.S. 238, 243-44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). "A showing that the plea was voluntarily and intelligently made must appear in the record." URCCC 8.04(A)(3). A plea is involuntary if it is coerced by fear, violence, deception, or improper inducements. Id.
¶ 8. Even though Welch did not have an attorney, the trial court advised him to obtain one. Welch chose to represent himself. The prosecutor told the court what the State could prove if the case went to trial. Welch disagreed, but admitted he harbored Smith for at least one week. The court accepted his plea and the State's sentencing recommendation. That sentence was five years suspended, and five years of non-reportable probation. After Welch asked how speeding tickets would affect his probation, the following occurred:
BY MR. BYRD [prosecutor]: Yes, sir. On the record, though, again, we would let Mr. Welch know that he would not be allowed to consume alcohol or be in the presence of others who are convicted felons or consume any alcohol and things of that nature. It's all part of the terms of the probation.
BY MR. WELCH: I don't accept that. I mean, that wasn't explained to me. I don't drink, but some of my friends do.
BY THE COURT: Mr. 
BY MR. WELCH: I do not drink.
BY THE COURT: Mr. Welch, all I can tell you is 
BY MR. WELCH: I plead not guilty.
BY THE COURT:  that he's going to  he's going to go over the terms and conditions of your probation.
BY MR. WELCH: Well, I was told it was nonreportable. I'm not going to mess up any more.
BY THE COURT: Well, just don't mess up. But he's going to go over the terms and conditions of your probation.
BY MR. WELCH: Yes, sir.
BY THE COURT: And I've already found you guilty. Don't get caught doing any of the things that he tells you not to do.
BY MR. WELCH: That wasn't the way the DA gave me the deal, now. Now he's coming up with some new stuff.
BY MR. BYRD: The only recommendation was what was written.
BY THE COURT: You're not going to have to report, but you're going to have to behave yourself.
BY MR. WELCH: Yes, sir.
BY THE COURT: All right.
. . . .

*1291 BY MR. WELCH: May I have an input into this? No one ever explained this. I was not supposed to be under any kind of supervision as far asI mean, I go to casinos. Now, I can get put in jail for going to casinos.
BY THE COURT: That's right.
BY MR. WELCH: And I don't want that. I plead not guilty. I'll go to court. You can reschedule or whatever you want to do, but I'll plead not guilty.
BY MR. BYRD: On probation 
BY MR. WELCH: I mean, they did not explain that to me. And I put it in my thing that nobody explained it to me. I was supposed to be [on] unsupervised probation, which if I screw up I go to  I mean, I don't drink, but I do go to casinos, and I'm just not going to plead to that.
. . . .
BY MR. WELCH: Well, they didn't explain it to me. If they'd explained it to me, if they'd went over what they got to do, I would have been glad to plead not guilty. I told Mr. O'Brien, I said, "I want to plead not guilty if there's any kind of restriction with the Probation Department." And he said, "Don't worry, you just got unsupervised probation." If they can change that to unsupervised probation on where I go or whatever, you know, it's okay with me. Five years don't bother me because I'm not going to mess up, but I've got friends that drink.
. . . .
BY MR. WELCH: Can somebody show metell me what I'm supposed to donot do so I'll 
BY THE COURT: He can tell you, and he will tell you.
BY MR. WELCH: If it's the same form that I've seen on other people[']s, I don't agree to that at all. It's the same form?
BY MR. CURRIE [probation officer]: Yes, sir.
BY MR. WELCH: No guns?

. . . .
BY MR. CURRIE: Correct.
BY MR. WELCH: No, I can't accept that. I've got guns.
. . . .
BY MR. WELCH: Yes, sir. But it still was a dirty deal. I mean, the DA's office, they didn't tell me what I was getting into. I would have never agreedI've had it on paper in there. I took it to Mr. O'Brien this morning. I said, "Here it is. Me and the Probation Department's had problems. I will not agree to anything the Probation Department's got control"he said, "Don't worry about that. It's nonreportable." Mr. O'Brien told me that today.

BY MR. BYRD: Yes, sir.
BY MR. WELCH: I didn't know it was going to be restrictions 
BY MR. BYRD: . . . Again, the only representation Mr. O'Brien made was that he would be placed on nonreporting probation, which is what the Court has done.
BY THE COURT: I went exactly by the recommendation, Mr. Welch.
BY MR. WELCH: I understand that. I understand that. You did exactly-but I wasn't aware of the little list of things that you can and can't do.
. . . .
BY MR. BYRD: Your Honor, and Mr. Welch has been wellhe is well aware of the terms of probation because he's as he said, has had plenty of dealings with the Department of *1292 Corrections because of other people that he's had residing with him and near him on probation. He's well aware of what they can and cannot do. In fact, if I'm not mistaken, he's gone numerous times to the Department of Corrections and reported various people, which he was aware, for violating their probation. And while he's saying now that he doesn't understand that he would actually be on probation when it was clear that he was on probation, I don't understand his complaint. But, again, he's well aware of the terms and conditions of probation because he hasyou know, he's beenquite often has come in and filed complaints against various inmate or former inmates who were on probation as toyou know, in order to try to get them revoked before this Court, and other courts.

. . . .
BY MR. WELCH:I was never told what unsupervised probation was. I know what a regular probation was.

(emphasis added).
¶ 9. The record indicates that Welch knew the consequences of his plea. The prosecutor's office truthfully informed Welch that it would recommend "nonreportable probation," and the trial court accepted the recommendation. Welch contradicted himself on whether or not he understood the terms of his probation. He also contradicted himself on whether the terms would have any effect on his decision to plead guilty.
¶ 10. Thus we find that Welch's plea was voluntarily and knowingly made. He was aware of the terms of the probation and admitted that those terms would not have affected his decision to plead anyway.
¶ 11. This issue has no merit.
IV. Was Welch's probation unlawfully revoked?
¶ 12. This issue is barred for failure to raise it at the trial court. Billiot v. State, 454 So.2d 445, 465 (Miss.1984).
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY DENYING POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.