DA 06-0604

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 217

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

JOSEPH WAYNE HINKLE,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC 05-299
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      William F. Hooks, Attorney at Law; Helena, Montana

      For Appellee:

      Mike McGrath, Montana Attorney General; Sheri K. Sprigg, Assistant
Attorney General; Helena, Montana

      Brant Light, Cascade County Attorney; Matthew Robertson,
Deputy County Attorney; Great Falls, Montana

Submitted on Briefs:  February 20, 2008

Decided:   June 17, 2008

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Joseph Wayne Hinkle appeals from the order of the Eighth Judicial District Court, Cascade County, revoking his youth court probation, imposing his previously stayed adult sentence, and suspending that sentence subject to sentencing conditions. We affirm.

¶2 We consider the following issues on appeal:

¶3 1. Did the District Court abuse its discretion by revoking Hinkle's youth court probation and imposing Hinkle's previously stayed twenty-year suspended sentence for negligent homicide?

¶4 2. Did the District Court impose an illegal sentence by restricting Hinkle from playing games of chance or entering casinos?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5 In June 2005, Hinkle and his best friend, Kyle McCracken, both age seventeen, were eating lunch in the cab of McCracken's pickup when a .22 caliber revolver that Hinkle was playing with discharged, striking McCracken in the head and killing him instantly. Hinkle admitted to detectives that he and McCracken were joking around with the gun when McCracken said "go ahead and shoot me," at which point the gun accidentally discharged. Hinkle was subsequently charged with negligent homicide, a felony, in violation of § 45-5-104, MCA (2003). Because Hinkle was seventeen years old at the time of the offense, the county attorney filed an information in district court under § 41-5-206(2), MCA (2003). Thereafter, pursuant to a plea agreement, Hinkle pled

2

"True" to the charge of negligent homicide and in return the county attorney agreed to recommend that he be "committed to the Youth Court for a suspended placement in a treatment facility until age 18 or sooner released; formal juvenile probation until age 25 or sooner released; and a stayed adult sentence of 20 years to the Montana Department of Corrections . . . ." The District Court "conditionally accepted the terms of the binding plea agreement" and transferred the matter to the Youth Court as an extended jurisdiction prosecution under § 41-5-1602, MCA (2003).

¶6     A sentencing hearing was held March 6, 2006, and the District Court sentenced Hinkle in accordance with the plea agreement. Pursuant to § 41-5-1604(1)(a)(ii), MCA, Hinkle was supplementally sentenced to an adult sentence of twenty years commitment to the Department of Corrections, with the sentence stayed on the condition that he not violate the provisions of the dispositional order and not commit a new offense. The court ordered Hinkle to fully comply with twenty-two conditions of his juvenile probation and warned him that "he would be held strictly accountable for any probation violation."

¶7     Twelve days after the sentencing hearing, Hinkle was cited for being a minor in possession of alcohol. At an evidentiary hearing on April 17, 2006, Hinkle admitted that he had violated two conditions of his youth court probation which required him to (1) "obey all laws, court orders, rules of the home, and rules of probation" and (2) "prohibited [him] from possessing or consuming alcoholic beverages or any illicit drug or inhalant, except as prescribed by a licensed physician." The court revoked Hinkle's probation under the Youth Court Act and transferred the matter back to the

District Court for further proceedings. A new pre-sentence investigation (PSI) was ordered.

¶8 During the dispositional hearing, the juvenile probation officer who supervised Hinkle and the adult probation officer who prepared Hinkle's PSI recommended that Hinkle be placed on adult probation and supervision. The PSI further recommended that Hinkle not be immediately incarcerated, "thereby giving this Defendant another chance, but one with serious consequences should he falter." The PSI also included a psychological evaluation of Hinkle, stating that Hinkle's profile was disconcerting in the area of "fearlessness," because Hinkle "is likely to engage in risky or potentially life-threatening activities . . . . Perhaps more significantly, he is recklessly foolhardy, seemingly uninhibited by genuine hazards, and disposed to pursue truly perilous ventures." Last, the court read two letters into the record: a victim impact statement from McCracken's parents and a letter in support of Hinkle. The court commented that both letters typified the balancing of interests which the court faced.

¶9 In imposing sentence, the court explained that it had considered a number of factors, including: (1) the negotiated agreement between the State and Hinkle that provided for imposition of an adult sentence if the conditions of youth probation were not followed; (2) that Hinkle should be held accountable because he violated the terms of his youth probation "right out of the gate;" (3) that the PSI did not indicate that Hinkle was unable to comply with the terms of his youth probation; (4) the testimony of the probation officers that the youth court was not "fully equipped to monitor and effectively

4

address probation and probation problems of an adult until age 25;" and (5) the victim impact report submitted by McCracken's family. The court imposed the twenty-year adult sentence which had originally been stayed, but suspended that sentence subject to nineteen conditions. Condition 4 prohibited Hinkle from entering any casinos or playing any games of chance. Hinkle appeals.

## STANDARD OF REVIEW

¶10 An offender who is not sentenced to a term of one year or more of actual incarceration is statutorily ineligible for sentence review by the Sentence Review Division (SRD). Section 46-18-903, MCA (2003). In such cases, we first review the sentence for legality to determine whether it falls within statutory parameters and, if so, we then examine whether the sentencing court abused its discretion in imposing the sentence. *State v. Armstrong*, 2006 MT 334, ¶ 8, 335 Mont. 131, ¶ 8, 151 P.3d 46, ¶ 8. An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *State v. Ruiz*, 2005 MT 117, ¶ 22, 327 Mont. 109, ¶ 22, 112 P.3d 1001, ¶ 22. The sentencing statutes authorize a district court to impose "reasonable restrictions" necessary to rehabilitate the offender or protect the victim and society. *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, ¶ 9, 179 P.3d 1164, ¶ 9 (citing § 46-18-201(4)(n), MCA (2005)). Accordingly, we first review a condition of probation for legality and then review the condition for an abuse of discretion. *Ashby*, ¶ 9.

¶11    Hinkle asserts that we should review sentences that are ineligible for SRD review in a manner that would "permit the parties the same opportunities afforded in the SRD process, at least to the extent that supplemental briefs may be filed, or additional sentencing data provided, so that this Court could fully review the sentence imposed." Essentially, Hinkle would have this Court review all SRD ineligible sentences for "uniformity." However, we have previously stated that

> [s]entence review is not a constitutional right, but a system the legislature has voluntarily created. As such, there is no due process right to sentence review. It is within the discretion of the legislature to determine under what circumstances and conditions to allow sentence review.

*State ex rel. Holt v. Dist. Ct.*, 2000 MT 142, ¶ 12, 300 Mont. 35, ¶ 12, 3 P.3d 608, ¶ 12. Accordingly, we decline Hinkle's invitation to review sentences for uniformity and we adhere to the two-tiered review stated above.

## DISCUSSION

¶12    **1. Did the District Court abuse its discretion by revoking Hinkle's youth court probation and imposing Hinkle's previously stayed twenty-year suspended sentence for negligent homicide?**

¶13    Hinkle asserts that the District Court abused its discretion by revoking Hinkle's youth court probation and imposing the previously stayed adult sentence. Hinkle contends that the "District Court took an unduly harsh and punitive approach to [Hinkle's] drinking violation." The State responds that the seriousness of the crime, Hinkle's age at the time it occurred, his demonstrated failure to heed warnings about his actions, and the lack of other options under the youth court system demonstrate that the District Court did not abuse its discretion in imposing the suspended adult sentence.

6

¶14 Under the plea bargain agreement, the State originally agreed to recommend youth court probation until age twenty-five as a sentence, conditioned upon Hinkle's compliance with the conditions of probation, including no commission of new offenses. Upon these terms the State also agreed to recommend a stay of a twenty-year adult sentence in order to provide an incentive for Hinkle to comply with the terms of his sentence. However, twelve days after sentencing, Hinkle violated two conditions of his probation, leaving the District Court with the options of either 1) continuing Hinkle's youth probation and the stay of the adult sentence or 2) ordering execution of the adult sentence. The court was presented with testimony from two probation officers, both of whom recommended that Hinkle be transferred to adult probation and parole on a suspended sentence, subject to conditions. The court also considered the PSI, the victim impact report, and a letter in support of Hinkle.

¶15 The court followed the recommendation of the probation officers, determining that to continue Hinkle's youth probation would act as little more than a "slap on the wrist" that would send Hinkle "on [his] way with very little consequence, if any, and with another seemingly hollow statement that this is serious business." The court concluded that this result would be inappropriate given the underlying offense of negligent homicide. Accordingly, the court imposed a *suspended* adult sentence, which, as the State asserts, was "a further act of grace" because, under the binding plea agreement, the court could have imposed a twenty-year sentence of confinement. Hinkle ignores this "act of grace" when asserting that the District Court acted in an "unduly harsh" manner.

¶16 A review of the record convinces us that the court handled this case in a sensitive and appropriate manner. Consequently, the District Court's order was neither arbitrary nor without conscientious judgment or exceeding the bounds of reason and was an appropriate exercise of discretion.

¶17 **2. Did the District Court impose an illegal sentence by restricting Hinkle from playing games of chance or entering casinos?**

¶18 Hinkle's second argument is that the District Court imposed an illegal condition by prohibiting him from entering casinos and playing games of chance. Hinkle contends that there "simply is no connection between the offense of conviction and the challenged restriction on entry into casinos, or playing any game of chance[,]" making the condition illegal pursuant to the "nexus" requirement of *State v. Ommundson*, 1999 MT 16, ¶ 11, 293 Mont. 133, ¶ 11, 974 P.2d 620, ¶ 11.

¶19 However, we recently expanded the *Ommundson* rule in *Ashby*. There we determined that "a sentencing judge may impose a particular condition of probation so long as the condition has a nexus to either the offense for which the offender is being sentenced, or to the offender himself or herself." *Ashby*, ¶ 15. Additionally, we have held a youth offender's sentence may appropriately consider the purposes of the Youth Court Act, which is to rehabilitate the Youth by establishing "a program of supervision, care, rehabilitation, detention, competency development, and community protection for youth before they become adult offenders[.]" Section 41-5-102(2)(b), MCA (2003); *In re D.A.S.*, 2008 MT 168, ¶ 15, __ Mont. __, ¶ 15, __ P.3d __, ¶ 15.

8

¶20 Hinkle's conviction of negligent homicide stemmed from his handling of a firearm. That crime requires a conscious disregard of a risk involving a gross deviation from a reasonable standard of conduct. Section 45-2-101(42), MCA (2003). The PSI prepared for the revocation proceeding described Hinkle as reckless and foolhardy, unable to appreciate risks and hazards, and predisposed to pursue perilous ventures. These personal characteristics make Hinkle particularly vulnerable to the pitfalls of irresponsible gambling. *See State v. Kroll*, 2004 MT 203, ¶ 31, 322 Mont. 294, ¶ 31, 95 P.3d 717, ¶ 31 ("the lure of easy money has long been a hallmark of gambling"). Further, Hinkle is a youth offender who requires supervision and competency development in order to successfully complete his sentence and achieve the objectives of rehabilitation under the Youth Court Act. As such, the District Court appropriately imposed the gambling and casino condition.

¶21 Affirmed.

/S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

9