*55
 
 KING, C.J.,
 

 for the Court:
 

 ¶ 1. On November 7, 2007, the Harrison County Circuit Court revoked Carl Douglas Necaise’s post-release supervision for entering a casino, consuming an alcoholic beverage at the casino, and playing $27,000 at the casino. Necaise filed a motion for post-conviction relief, arguing . that his post-release supervision was unlawfully revoked. The circuit court denied the motion. Now, Necaise appeals arguing that his post-release supervision was unlawfully revoked because: (1) his post-release-supervision conditions did not prohibit him from visiting casinos; (2) he was actually drinking a non-alcoholic beer at the casino; and (3) his friends, not him, used his casino player’s card to gamble. We find that the circuit court erred by revoking Necaise’s post-release supervision because: (1) the prohibition against entering a casino was not listed as a condition of his post-release supervision; and (2) the evidence was insufficient to prove that Necaise more likely than not violated his post-release supervision by drinking an alcoholic beverage. However, we affirm the circuit court’s decision to revoke Necaise’s post-release supervision for misleading the circuit court regarding his inability to pay his supervision fees.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶2. In December 2002, Necaise pled guilty in the Circuit Court of Harrison County to touching a child for lustful purposes. Necaise testified that he was under the influence of alcohol when he touched the child. The circuit court noted that Necaise had two prior felony convictions for driving under the influence, but the circuit court declined to enroll Necaise in an alcohol-treatment program. Necaise was sentenced to twelve years in the custody of the Mississippi Department of Corrections (MDOC), with nine years suspended and three years of post-release supervision. The conditions of Necaise’s post-release supervision stated, in part, that:
 

 (a) Defendant shall hereafter commit no offense against the laws of this or any state of the United States, or of the United States;
 

 (b) Avoid injurious and vicious habits;
 

 (c) Avoid persons or places of disreputable or harmful character;
 

 (d) Report to the supervising officer as directed;
 

 (e) Permit the supervising officer to visit in [his] home or elsewhere;
 

 (f) Work faithfully at suitable employment so far as possible;
 

 [[Image here]]
 

 (h) Remain within the State of Mississippi unless authorized to leave on proper application ...;
 

 (i) Support dependents;
 

 (J) That I do hereby waive extradition to the State of Mississippi from any jurisdiction'in or outside of the United States where defendant may be found and will not contest any effort by any jurisdiction to return defendant to the State of Mississippi;
 

 (k) Shall pay to the Department of Corrections the sum of $30.00 per month by certified check or money order, until discharged from supervision
 

 [[Image here]]
 

 (l) .And, further, that defendant shall pay . court costs, $10.00 C.V.C.F., $1,500 fine, pay $100 per month on costs beginning 60 days after release from custody and every thirty days thereafter until all costs are paid in full;
 

 (m) Defendant cannot possess any type of weapon;
 

 
 *56
 
 (n) Submit ... to any type of breath, saliva or urine chemical analysis test, the purpose of which is to detect the possible presence of alcohol or a controlled substance prohibited or controlled by any law of the State of Mississippi or the United States;
 

 (o) The defendant must register as a sex offender upon release from custody with the Department of Safety.
 

 Because of Necaise’s limited income, the circuit court waived his post-release-supervision fees.
 

 ¶ 3. On September 20, 2007, the State filed a petition to revoke Necaise’s post-release supervision on the grounds that: (1) he entered a casino; (2) he consumed alcoholic beverages at the casino; and (3) he spent $27,000 at the casino. A hearing on the matter was held on November 5, 2007. During the hearing, Necaise argued that he had only drank an O’Doul’s, which is a non-alcoholic beer; he had only played the “free play” at the casino; and he had let other people use his player’s card. Ne-caise also argued that: “I was never told that I couldn’t go to the boat, and I never got anything saying that, to the casino [sic].”
 

 ¶4. Officer Eugene Dufrene, Necaise’s probation officer, testified that he had smelled alcohol on Necaise’s breath one day; but since he did not have a Breathalyzer, he could not test Necaise. Officer Dufrene testifiéd that this occurrence made him suspicious, and he began to investigate Necaise. During his investigation, Officer Dufrene contacted the Mississippi Gaming Commission and discovered that Necaise had visited the Island View Casino. Officer Dufrene testified that he had obtained evidence, such as videotape and photographs, of Necaise at the casino. He had also obtained Necaise’s player’s card records. Officer Dufrene testified that he had asked several waitresses at the casino whether they served non-alcoholic beer, and the waitresses said that they did not have non-alcoholic beer “because nobody really orders them.”
 

 ¶ 5. Finding that Necaise had violated the terms of his post-release supervision, the circuit court revoked Necaise’s post-release supervision and modified his sentence. Necaise’s sentence was modified to nine years in the custody of the MDOC, with seven years suspended, two years of house arrest, and three years of post-release supervision. The circuit court gave Necaise new post-release-supervision conditions. In these new conditions, the circuit court specifically instructed Necaise that he was not to possess or use alcoholic beverages, and he was not to “visit gambling places or associate with persons of bad reputation.” Soon thereafter, Necaise filed a motion to reconsider, and the circuit court denied the motion.
 

 ¶ 6. On January 13, 2009, Necaise filed a motion for post-conviction relief. In the motion, Necaise argued that his post-release supervision was unlawfully revoked because his post-release-supervision conditions did not state that he could not visit casinos, and the prohibition bears no relation to his crime. The circuit court denied Necaise’s motion for post-conviction relief. Aggrieved, Necaise timely filed his notice of appeal.
 

 ANALYSIS
 

 ¶ 7. “When reviewing a lower court’s decision to deny a [motion] for post-conviction relief this Court will not disturb the trial court’s factual findings unless they are found to be clearly erroneous.”
 
 King v. State,
 
 936 So.2d 481, 485 (¶ 13) (Miss.Ct.App.2006) (quoting
 
 Gatewood v. State,
 
 909 So.2d 754, 756 (¶3) (Miss.Ct.App.2005)). However, questions of law are reviewed de novo.
 
 Id.
 

 
 *57
 
 ¶ 8. Necaise challenges whether his post-release supervision was unlawfully revoked under Mississippi Code Annotated section 99-39-5(h) (Rev.2007). Necaise argues that his post-release-supervision conditions did not state that he could not visit casinos, and the prohibition bears no relation to his crime. Conversely, the State argues that the evidence supports the circuit court’s finding that Necaise more likely than not violated the terms of his post-release supervision because: (1) Necaise failed to avoid injurious and vicious habits; (2) he failed to avoid places of disreputable or harmful character; and (3) he perpetrated a fraud against the circuit court, claiming that he could not pay his supervision fees.
 

 ¶ 9. The circuit court is responsible for specifying the terms and conditions upon which post-release supervision or a suspended sentence are contingent.
 
 Artis v. State,
 
 643 So.2d 533, 536 (Miss.1994). Mississippi Code Annotated section 47-7-35(1) (Rev.2004) provides the following:
 

 (1) The courts referred to in Section 47-7-33 or 47-7-34 shall determine the terms and conditions of probation or post-release supervision and may alter or modify, at any time during the period of probation or post-release supervision, the conditions and may include among them the following or any other:
 

 That the offender shall:
 

 (a) Commit no offense against the laws of this or any other state of the United States, or of the United States;
 

 (b) Avoid injurious or vicious habits;
 

 (c) Avoid persons or places of disreputable or harmful character;
 

 (d) Report to the probation and parole officer as directed;
 

 (e) Permit the probation and parole officer to visit him at home or elsewhere;
 

 (f) Work faithfully at suitable employment so far as possible;
 

 (g) Remain within a specified area;
 

 (h) Pay his fine in one (1) or several sums;
 

 (i) Support his dependents;
 

 (j) Submit, as provided in Section 47-5-601, to any type of breath, saliva or urine chemical analysis test, the purpose of which is to detect the possible presence of alcohol or a substance prohibited or controlled "by ■any law of the State of Mississippi or the United States;
 

 (k) Register as a sex offender if so required under Title 45, Chapter 33.
 

 The circuit court followed the language of section 47-7-35(1) when constructing Ne-caise’s post-release-supervision conditions, with a few additions.
 

 ¶ 10. The circuit court may revoke a person’s post-release supervision “upon a showing that the defendant ‘more likely than not’ violated the terms of [post-release supervision].”
 
 Morgan v. State,
 
 995 So.2d 787, 790 (¶9) (Miss.Ct.App.2008) (quoting
 
 Younger v. State,
 
 749 So.2d 219, 222 (¶ 12) (Miss.Ct.App.1999)). However, “it is necessary for that court to base its revocation on the violation of the clear terms and conditions of the suspended sentence.”
 
 Artis,
 
 643 So.2d at 537.
 

 ¶ 11. In
 
 Artis,
 
 the defendant was convicted of armed robbery and manslaughter. He was sentenced to twenty-five years, with twenty years suspended, on the armed-robbery charge; and he was sentenced to twenty years, with fifteen years suspended on the manslaughter charge, with the sentences ordered to run concurrently.
 
 Id.
 
 The circuit court did not impose a period of probation.
 
 Id.
 
 Artis’s probation was later revoked, and he filed an out-of-time appeal, arguing that the
 
 *58
 
 revocation was improper because there was no probation period or probation conditions imposed on his suspended sentence.
 
 Id.
 
 at 535. The Mississippi Supreme Court determined that because the circuit court failed to state explicitly any conditions upon Artis’s suspended sentence, Ar-tis’s suspended sentence could not be revoked.
 
 Id.
 
 at 585-38.
 

 ¶ 12.
 
 Artis
 
 stands for the proposition that the circuit court must articulate conditions of probation or post-release supervision. Clearly,
 
 Artis
 
 is distinguishable from this case because absolutely no probation conditions were articulated in
 
 Artis,
 
 while at least some post-release-supervision conditions were articulated in this case. The question we must answer now is whether these conditions were sufficient to notify Necaise that he could not visit a casino.
 

 ¶ 13. There are no Mississippi cases that specifically address whether a prohibition against visiting a casino is an appropriate condition of probation or post-release .supervision. However, there have been at least two instances where a prohibition on casinos or gambling was imposed as a condition of probation. For instance in
 
 Leonard v. State,
 
 271 So.2d 445 (Miss.1973), a probationer’s suspended sentence and probation were revoked for numerous violations, including being at a disreputable place — a juke joint where drinking and illegal gambling took place.
 
 Id.
 
 at 446.
 

 ¶ 14. Also in
 
 Welch v. State,
 
 958 So.2d 1288, 1291 (¶ 8) (Miss.Ct.App.2007), the circuit court specifically informed the defendant during his guilty plea hearing that his probation could be revoked for visiting a casino. In this case, we take issue with the fact that Necaise was not specifically instructed to avoid casinos. Thus, we look to other jurisdictions for guidance.
 

 A. Prohibited Legal Conduct
 

 ¶ 15. In
 
 State v. Weisberg,
 
 473 N.W.2d 381, 382 (Minn.Ct.App.1991), the defendant was initially convicted of an illegal gambling-related offense. The circuit court gave him an oral warning not to gamble.
 
 Id.
 
 at 382-83. But his written sentencing order only stated that he was to remain a law-abiding citizen and to not have any same or similar offenses.
 
 Id.
 
 Later, the defendant’s probation was revoked after he was acquitted on a charge of sports bookmaking “by reason of mental deficiency.”
 
 Id.
 
 at 382. The Minnesota Court of Appeals reversed the revocation, finding that while a circuit court may proscribe acts that are not criminal, the defendant was not given adequate warning of the legal conduct which may have been prohibited by the circuit court’s oral warning.
 
 Id.
 
 at 382-83. The defendant’s written probation conditions were considerably narrower.
 
 Id.
 
 at 383. This case stands for the proposition that a court may prohibit legal conduct in conditions of probation or post-release supervision. But the condition must be specifically stated to give the defendant proper notice of what conduct is prohibited.
 

 B. Nexus to the Crime
 

 ¶ 16. In
 
 State v. Hinkle,
 
 344 Mont. 236, 186 P.3d 1279, 1280-81 (¶¶ 1-8) (2008), a youth offender had his probation revoked and was transferred to adult-probation supervision. One of his new probation conditions prohibited him from entering a casino.
 
 Id.
 
 at 1281 (¶ 9). The defendant argued that the condition was illegal because there was no nexus between his crime — negligent homicide — and the restriction on entry into casinos.
 
 Id.
 
 at 1282 (¶ 18). The Supreme Court of Montana stated that “a sentencing judge may impose a particular condition of probation so long as the condition has a nex
 
 *59
 
 us to either the offense for which the offender is being sentenced, or to the offender himself or herself.”
 
 Id.
 
 at (¶ 19) (citation omitted). The court noted that the defendant’s conviction of negligent homicide resulted from his mishandling of a firearm, which evidenced “a conscious disregard of a risk involving a gross deviation from a reasonable standard of conduct.”
 
 Id.
 
 at (¶ 20). Witnesses also testified that the defendant was “reckless and foolhardy, unable to appreciate risks and hazards, and predisposed to pursue perilous ventures.”
 
 Id.
 
 Based on this evidence, the court ruled that the defendant was “vulnerable to the pitfalls of irresponsible gambling,” making the casino condition appropriate.
 
 Id.
 
 The difference between
 
 Hinkle
 
 and this case is that the condition prohibiting Hinkle from entering a casino was specifically stated as one of his nineteen probation conditions. In addition, Hinkle’s casino prohibition was explained as an offender-related condition of probation.
 

 ¶ 17. In an unpublished Ohio case, the defendant was participating in a “gambling game” for boaters when his boat struck the victim’s boat, killing the man.
 
 State v. Mastronardi,
 
 2002 WL 91280, *1 (Ohio Ct.App. 6 Dist.2002). The defendant was convicted of involuntary manslaughter.
 
 Id.
 
 at n. 1. He later filed a motion for “shock probation,” which was granted.
 
 Id.
 
 During the hearing, the circuit court verbally instructed the defendant of his probation conditions, one of which precluded him from frequenting any gambling establishment; and this condition was included in his written probation conditions.
 
 Id.
 
 The defendant’s probation was later revoked for entering a casino in Ontario, Canada.
 
 Id.
 
 The defendant challenged the revocation, arguing, in pertinent part, that: (1) the condition was not related to his crime; and (2) a casino is a legal establishment, and it is unlawful to revoke his probation for a lawful act.
 
 Id.
 
 at *2-3, The court upheld the revocation of probation. On the first issue, the court ruled that the condition was related to the crime because the defendant was gambling when he killed the victim.
 
 Id.
 
 at ⅜2. On the second issue, the court ruled that “[t]he problem with appellant’s entering the casino is not the legality or illegality of the act, but that he clearly was prohibited by the conditions of his probation from doing so.”
 
 Id.
 
 at *3. Once again, this case is distinguishable from Necaise’s case because the court in
 
 Mastronardi
 
 specifically prohibited the defendant from frequenting casinos in the terms of his probation.
 

 C. Adequate Warning
 

 ¶ 18. The State maintains that the post-release-supervision condition instructing Necaise to “avoid injurious and vicious habits” and to “avoid places of disreputable or harmful character” sufficiently notified Necaise to stay away from casinos. As the case law indicates, it is appropriate for the circuit court to preclude a defendant from doing a legal act so long as it bears a nexus to his crime of conviction, and he is given adequate notice of the prohibition. But we do not see a nexus between Necaise’s conviction for touching a child for lustful purposes and the prohibition on visiting a casino; and most importantly, the circuit court did not give- Necaise adequate warning that his post-release supervision could be revoked for visiting a casino. The circuit court must put the condition in writing. After revoking Necaise’s post-release supervision, the circuit court specifically included the casino prohibition in Necaise’s new post-release-supervision conditions. Thus, this is a fairly simple task for our circuit courts to complete. Accordingly, we determine that the circuit court’s decision to revoke Necaise’s post-release su
 
 *60
 
 pervision for visiting a casino was reversible error.
 

 D. Alcoholic Beverages
 

 ¶ 19. Because Necaise admitted tliat he was intoxicated when he committed his crime, we rule that there is a nexus between Necaise’s conviction of touching a child for lustful purposes and' his post-release-supervision condition prohibiting him from drinking alcoholic beverages. In its petition to revoke- Necaise’s post-release supervision, the State claimed that Necaise was drinking beer at the casino. Necaise argued that he was drinking O’Doul’s, which is a non-alcoholic beer. Officer Dufrene testified that he asked the waitresses whether they sold O’Doul’s beer, and the waitresses indicated that “nobody really orders them.” Officer Du-frene also provided video evidence and still shots of Necaise at the casino carrying a can. This is not evidence that Necaise was drinking an alcoholic beverage.
 

 ¶ 20. As previously stated, the circuit court may revoke a defendant’s post-release supervision upon a showing that the defendant more likely than not violated the conditions of his post-release supervision.
 
 Morgan,
 
 995 So.2d at 790 (¶ 9). Because of the State’s lack of evidence, we conclude that the evidence was insufficient to prove that Necaise more likely than not violated his post-release supervision. Thus, we reverse the revocation of Necaise’s post-release supervision on this ground.
 

 E. Waiver of Supervision Fees
 

 ¶ 21. Next, we determine that the evidence was sufficient for the circuit court to.revoke Necaise’s post-release supervision on the ground that Necaise misled the circuit court regarding his inability to pay his supervision fees. Because Necaise claimed that he was financially unable to pay his supervision fees, the circuit court waived the fees. According to Necaise’s player’s card records, he gambled nearly $27,000 at the casino. There is no evidence regarding in what time frame the $27,000 was spent. However, during the evidentiary hearing, the following exchange occurred:
 

 COURT: Do you remember June the 29th of '07? Let me just pick one of the dates out in this financial run, Mr. Necaise.
 

 NECAISE: Yes, sir.
 

 COURT: Do you remember being there that day?
 

 NECAISE: Yes, sir.
 

 COURT: Do you remember how much you lost?
 

 NECAISE: Well, I played the free play.
 

 [[Image here]]
 

 COURT: Well, the free play cost you $2,413.29.
 

 Necaise went on to explain that his friends use his player’s card sometimes. To refute Necaise’s testimony, Officer Dufrene provided the circuit court with video and still shots of Necaise inserting bills into a slot machine. The circuit court expressed its distaste regarding how Necaise claimed that he did not have enough money to pay his supervision fees, but instead spent thousands of dollars at the casino.
 

 ¶ 22. Based on our review of the record, we find that the evidence is sufficient to prove that Necaise, more likely than not, misled the circuit court regarding his inability to pay his supervision fees. Thus, we determine that the circuit court did not err by revoking Necaise’s post-release supervision on this ground.
 

 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED IN PART AND REVERSED IN PART. ALL COSTS OF
 
 *61
 
 THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. ROBERTS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.