FILED

03/30/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0320

DA 19-0320

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 76

STATE OF MONTANA,

Plaintiff and Appellee,

v.

ETTA KOEHLER DOUBEK,

Defendant and Appellant.

APPEAL FROM:     District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC 18-38
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Ryan P. Archibald, Bitterroot Law, PLLC, Hamilton, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Damon Martin, Assistant
Attorney General, Helena, Montana

Marcia Boris, Lincoln County Attorney, Libby, Montana

Submitted on Briefs:  February 3, 2021

Decided:  March 30, 2021

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Defendant and Appellant Etta Koehler Doubek (Doubek) appeals from the April 4, 2019 Judgment and Sentence issued by the Nineteenth Judicial District Court, Lincoln County, following her convictions after a jury trial for Criminal Possession of Dangerous Drugs (CPDD), a felony, and Criminal Possession of Drug Paraphernalia (CPDP), a misdemeanor. Relevant to the present appeal, the District Court sentenced Doubek to four years with the Montana Department of Corrections (DOC), with all four years suspended for the CPDD conviction.

¶2 We restate the issue on appeal as follows:

*Whether the District Court abused its discretion by sentencing Doubek to a suspended sentence after determining the State presented sufficient evidence to overcome the presumption in favor of a deferred sentence under § 45-9-102(4), MCA (2017).*

¶3 We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On February 22, 2018, deputies from the Lincoln County Sheriff's Office responded to a report of shots fired. Captain Boyd White[1] was the first to respond. Captain White made contact with the reporting party, Doubek's neighbor, who informed him she believed shots were fired at Doubek's residence. Deputy Brent Faulkner arrived shortly after

---

[1] At the time of the February 2018 incident, Captain White was a Sergeant. He was promoted to the rank of Captain before trial. For clarity, we refer to him as Captain White throughout this opinion.

2

Captain White, and the two of them proceeded to Doubek's residence. Doubek answered the front door, at which time the officers asked her how she was doing. She responded she was good, but reported a preoccupation with bugs in her house. Doubek tried to shut the door, but Captain White blocked her by putting his foot in the door. Captain White asked if anyone else was there, and Doubek said it was just her. Captain White then explained why he was there, telling Doubek there was a report of gunshots. Doubek denied any gunshots and turned away and walked into her residence. She picked up something off an end table and continued walking further into her house. Captain White followed her, grabbed Doubek by the arm, and Deputy Faulkner placed her in handcuffs.

¶5 Doubek continued to talk about the bugs in her house and attempted to show them to the officers. She told the officers they could search the house and that she had guns in a gun cabinet when asked if there were any firearms present. Captain White then read Doubek her *Miranda* rights[2] and questioned her about the situation. Captain White explained he saw Doubek grab the item from the end table and knew it was a methamphetamine pipe. Doubek admitted the item was a methamphetamine pipe, but denied the presence of any methamphetamine in the house outside of what would be found in the pipe. Doubek informed Captain White she had mental health issues. Doubek continued to focus on the bugs she believed were in her house and repeatedly denied any gunshots came from her house. Doubek was placed under arrest for possession of

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

methamphetamine. No drugs (outside of the pipe) or weapons not disclosed by Doubek were found by the officers who searched her residence. Additionally, there was no evidence discovered which showed a gun had been fired or that anyone else was in the residence.

¶6     Deputy Faulkner transported Doubek to the Libby jail. While waiting for a female guard to arrive at the jail, Deputy Faulkner performed a pat down search of Doubek and discovered a small brown bottle with a crystalline substance in the pocket of Doubek's sweatshirt. This substance later tested positive for methamphetamine.

¶7     Doubek was charged by Information with one count of felony CPDD and one count of misdemeanor CPDP on March 1, 2018. After a two-day trial on January 15 and 16, 2019, the jury found Doubek guilty of both charges. The District Court held a sentencing hearing on April 1, 2019. At that hearing, Captain White testified to a couple law enforcement contacts with Doubek occurring before this incident wherein she had sought assistance from law enforcement for reported thefts and harassing phone calls. The only contact where he could recall any details related to an incident three years prior involving a 2015 911 call he responded to in which Doubek sought law enforcement assistance to remove her ex-husband from her residence and indicated she was going to shoot him. Captain White testified the ex-husband was not present at the time he arrived and, although Doubek had a rifle, she was cooperative and appropriately put the gun away or gave it to

4

law enforcement.[3]  Doubek was not arrested or charged with anything in connection with this incident.  Captain White also testified that between the time of trial and sentencing, Doubek had one additional contact with law enforcement where she sought assistance as she believed someone had gotten into her home and moved things around.  Again, Doubek was not arrested or charged in connection with her seeking law enforcement assistance and had no further law enforcement contact between trial and sentencing.  Prior to sentencing, Doubek submitted evidence showing she had been diagnosed with both bipolar disorder and ADHD.  Doubek's presentence investigation showed she had no previous criminal history and the CPDD conviction was her first felony.  Doubek testified at sentencing expressing her shame and embarrassment around the incident.  She testified that since her arrest she was seeing her psychiatrist, Dr. Hicks, on a regular basis.  She reported to changes in her medication resulting in positive changes—"like somebody turned the lights on . . . I feel like the best mentally I have felt in years . . .  I have better control over my thought process and decision-making."  She related an intention to continue to engage in mental health treatment to build on the gains she had already made.

¶8     At sentencing, the State argued Doubek should be committed to DOC for a period of five years, with two years suspended.  The State recommended this sentence purportedly for "public safety," noting law enforcement was initially called to Doubek's residence on the night of her arrest after a report of gunshots, though no evidence existed that Doubek

_____

[3] He could not recall which occurred.

5

was involved with shooting a gun that night. Doubek asked for a deferred imposition of sentence as she had no previous criminal history and was presumed to be entitled to a deferred imposition of sentence pursuant to § 45-9-102(4), MCA (2017). Doubek's counsel argued this offense was typical of a myriad of other drug possession cases where defendants routinely receive deferrals. She argued the only difference here was that Doubek exercised her right to go to trial and that the State was now seeking to penalize her for doing so. The District Court then sentenced her to a four-year DOC commitment, with all four years suspended, and emphasized the benefit Doubek would receive from long-term supervision. Doubek appeals.

## STANDARD OF REVIEW

¶9 An offender who is not sentenced to a term of one year or more of actual incarceration is statutorily ineligible for sentence review by the Sentence Review Division. Section 46-18-903(1), MCA. In such a case, we first review the sentence for legality to determine whether it falls within statutory parameters and, if so, we then examine whether the sentencing court abused its discretion in imposing the sentence. *State v. Hinkle*, 2008 MT 217, ¶ 10, 344 Mont. 236, 186 P.3d 1279 (citing *State v. Armstrong*, 2006 MT 334, ¶ 8, 335 Mont. 131, 151 P.3d 46). "A district court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in a substantial injustice." *State v. Reams*, 2020 MT 326, ¶ 9, 402 Mont. 366, 477 P.3d 1118 (citing *State v. Webber*, 2019 MT 216, ¶ 8, 397 Mont. 239, 448 P.3d 1091).

6

**DISCUSSION**

¶10 *Whether the District Court abused its discretion by sentencing Doubek to a suspended sentence after determining the State presented sufficient evidence to overcome the presumption in favor of a deferred sentence under § 45-9-102(4), MCA (2017).*

¶11 After Doubek was convicted of CPDD and CPDP at trial, the District Court sentenced her to a four-year suspended sentence on the CPDD charge. Since the sentence imposed does not contain at least one year of actual incarceration, we review it for both legality and abuse of discretion. *Hinkle*, ¶ 10.

¶12 To begin, Doubek does not appear to argue a four-year suspended sentence for CPDD is not a legal sentence. Indeed, the 2017 CPDD statute provided for a possible five-year maximum sentence for methamphetamine possession such as Doubek's: "A person convicted of criminal possession of dangerous drugs . . . shall be imprisoned in the state prison for a term not to exceed 5 years or be fined an amount not to exceed $ 5,000, or both." Section 45-9-102(3), MCA (2017).[4] "A sentence is legal if it falls within statutory parameters." *State v. Brave*, 2016 MT 178, ¶ 5, 384 Mont. 169, 376 P.3d 139 (citing *State v. McCaslin*, 2011 MT 221, ¶ 6, 362 Mont. 47, 260 P.3d 403). Because Doubek's four-year suspended sentence falls within statutory parameters, it is legal. *Brave*, ¶ 5.

---

[4] On January 1, 2021, this section was renumbered as § 45-9-102(2), MCA, after Montana voters approved Ballot Initiative No. 190 in the 2020 general election. CPDD offenses still carry a five-year maximum sentence. *See* § 45-9-102(2), MCA.

¶13 Since Doubek's sentence is legal, we turn now to whether it was an abuse of discretion. *Armstrong*, ¶ 8. An abuse of discretion occurs when a district court acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in a substantial injustice. *Webber*, ¶ 8. Doubek asserts she was presumed to be entitled to a deferred imposition of sentence and the State did not present sufficient evidence to overcome that presumption. The State responds it did present sufficient evidence to overcome the presumption for a deferred sentence and therefore the District Court did not abuse its discretion. We agree with Doubek.

¶14 Montana's CPDD statute provides "[a] person convicted of a first violation under this section is presumed to be entitled to a deferred imposition of sentence of imprisonment." Section 45-9-102(4), MCA (2017).[5] The presumption is designed to avoid the devastating consequences of a felony conviction where a defendant is young or, as here, has shown historical ability to maintain a law-abiding lifestyle. It provides incentive for a defendant who has shown the ability to maintain a law-abiding lifestyle to demonstrate he or she is able to adjust his or her conduct accordingly following an aberration in his or her usual law-abiding lifestyle while still permitting the court to impose a period of supervision and other conditions during the deferral period. The presumption of a deferred imposition of sentence for a first offense CPDD violation is not conclusive, however, and may be overcome "by evidence on the trial or sentencing hearing record of some substantial

---

[5] Now found at § 45-9-102(3), MCA.

8

aggravating circumstance such as, for example, evidence that either elevates the circumstances of the offense itself beyond a typical prima facie case in nature, degree, or effect or involves subsequent post-offense, presentence conduct indicating continued criminal propensity." *State v. Wilkes*, 2021 MT 27, ¶ 18, ___ Mont. ___, 480 P.3d 823 (citing *State v. Bolt*, 204 Mont. 261, 264, 664 P.2d 322, 324-25 (1983)). In addition, to overcome the presumption via sufficient evidence: (1) the record itself must disclose the evidence; (2) the evidence may be contained either within or without the proof of the crime itself; (3) aggravating circumstances should be "some substantial evidence over and above" the simple facts of the prima facie case; and (4) absent a voluntary waiver, "hearings and a record" are required to disclose the aggravating evidence. *Campus v. State*, 157 Mont. 321, 327, 483 P.2d 275, 279 (1971). We "determine the sufficiency of aggravation on a case-by-case basis." *Campus*, 157 Mont. at 327, 483 P.2d at 279. "The sentencing court has broad discretion to determine whether an aggravating factor exists based on evidence on the trial or sentencing hearing record and pertinent correctional and sentencing policies defined by statute." *Wilkes*, ¶ 18 (citations omitted).

¶15 The State asserts it met all four factors to overcome the presumption Doubek is entitled to a deferred imposition of sentence on her first-offense CPDD conviction. The fourth factor, holding a required hearing, was clearly met by the District Court taking testimony at the sentencing hearing, so we need not address that factor here. *Campus*, 157 Mont. at 327, 483 P.2d at 279.

9

¶16    The State first argues the "district court was given sufficient credible evidence to justify the determination that there were substantial aggravating circumstances" which warranted a suspended, rather than deferred, sentence.  In support of this argument, the State recounts Doubek's history of contact with law enforcement prior to this incident as well as her one post-trial contact.  We are not persuaded the history recounted by the State in this regard constitutes a "substantial aggravating circumstance."  As recounted by the State, Doubek's history with law enforcement consists primarily of her seeking law enforcement assistance.  The only contact prior to this arrest which law enforcement could recall with any specificity involved the 2015 911 call where Doubek sought law enforcement assistance to remove her ex-husband from her residence. Her only law enforcement contact post-trial involved Doubek seeking assistance as she believed someone had gotten into her home and moved things around.  Outside of the February 2018 CPDD incident at issue here, Doubek was never arrested or charged with any crime.

¶17    As to the second factor, whether the aggravating evidence is "contained either within or without the proof of the crime itself," *Bolt*, 204 Mont. at 265, 664 P.2d at 324 (quoting *Campus*, 157 Mont. at 327, 482 P.2d at 279), the State again argues Doubek's history of law enforcement responding to her residence constitutes proof she is not entitled to a deferred sentence.  Once again, Doubek was never charged with a crime during any of the other times law enforcement came to her residence outside of the instant matter.  The State additionally contends Doubek's "lack of accountability" by blaming another person for the presence of methamphetamine in her residence was appropriately considered by the

District Court as an aggravating circumstance. We have previously found a "lack of candor before the trial court" when an offender blamed other persons for leaving marijuana in his car was not sufficient to classify "as one of those aggravating circumstances necessary to overcome the presumption of a deferred sentence." *State v. Burris*, 168 Mont. 195, 198, 542 P.2d 1223, 1225 (1975). Doubek attempting to place the blame for the presence of methamphetamine on another person is not sufficient to classify as an aggravating circumstance and defeat the presumption of a deferred sentence. *Burris*, 168 Mont. at 198, 542 P.2d at 1225.

¶18 The third factor we address is whether the aggravating circumstances provide "some substantial evidence over and above" the simple facts of a prima facie case. *Campus*, 157 Mont. at 327, 483 P.2d at 279. Here again, the State argues Doubek's contacts with law enforcement are due to a pattern of escalating dangerous behavior consistent with "methamphetamine psychosis." Again, the only contact prior to this arrest which Captain White could recall with any specificity involved the 2015 911 call where Doubek sought law enforcement assistance to remove her ex-husband from her residence. When law enforcement arrived, Doubek was cooperative and was not arrested or charged with any crime. At the time of the February 2018 incident, law enforcement responded to a report of "gunshots" coming from Doubek's residence. Though the residence was searched, no evidence of a gunshot was ever found and Doubek was charged only with CPDD and CPDP. Finally, though Captain White testified Doubek's post-trial contact with law enforcement, when she reported suspicious activity at her house, was "consistent" with the

behavior of "people who are under the influence of methamphetamine," he was not present at the post-trial contact and Doubek was not arrested or charged with any crime, let alone another methamphetamine-related one. Further, Captain White admitted he was not a certified drug recognition expert and he had not attended specialized training on mental health and co-occurring substance use disorders. This incident clearly does not demonstrate "post-offense, presentence conduct indicating continued criminal propensity." *Wilkes*, ¶ 18. Similarly, the record on the whole reflects no "substantial evidence over and above" the circumstances of the instant offense which would defeat the presumption of a deferred sentence in this case. *Campus*, 157 Mont. at 327, 483 P.2d at 279.

¶19 In this case, the District Court rejected the State's recommendation Doubek receive a five-year DOC commitment, with two years suspended, and instead sentenced her to a suspended sentence and emphasized the benefit of long-term supervision to Doubek. It is clear the court believed incarceration was not appropriate and Doubek could receive treatment for her mental health and/or substance abuse issues in the community. It is situations like this for which the deferral presumption is designed. Had the District Court properly deferred imposition of sentence, the District Court could have imposed the same term of supervision and the same conditions it did for Doubek's suspended sentence. *See* § 46-18-201(4), MCA ("When deferring imposition of sentence or suspending all or a portion of execution of sentence, the sentencing judge may impose on the offender any reasonable restrictions or conditions during the period of the deferred imposition or suspension of sentence."). Concerns for public safety, if any, could be equally addressed

12

under a deferral period, and Doubek was presumed to be entitled to a deferred imposition of sentence as a first-time, nonviolent drug offender.

¶20    In the present case, there are neither "substantial aggravating circumstance[s]" related to Doubek's CPDD offense nor evidence of "post-offense, presentence conduct indicating continued criminal propensity" to overcome the presumption Doubek is entitled to a deferred imposition of sentence. *Wilkes*, ¶ 18. The District Court therefore abused its discretion by sentencing Doubek to a suspended sentence, rather than deferring imposition of sentence as presumed in § 45-9-102(4), MCA (2017), such that it is appropriate to reverse the imposed suspended sentence and remand this matter to the District Court to defer imposition of sentence consistent with this Opinion.

## CONCLUSION

¶21    The District Court abused its discretion by sentencing Doubek to a four-year suspended DOC sentence rather than a deferring imposition of sentence as sufficient evidence was not presented to overcome the presumption Doubek was entitled to a deferred imposition of sentence pursuant to § 45-9-102(4), MCA (2017).

¶22    Reversed and remanded.

/S/ INGRID GUSTAFSON

We concur:

/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON

13